R. E. LEAVELL v. WESTERN UNION TELEGRAPH COMPANY.

*Telegraph Companies — Telegraph Commission — Illegal Rates of Charge for Service—Discrimination.*

1. Where a telegraph company has a continuous line between two points in this State, the fact that, in transmitting it, it sent the message over the lines of another company does not excuse its violation of the rate prescribed by the Railroad Commissioners for the transmission of a message sent over the lines of one company.

2. It is the duty of a telegraph company to have sufficient facilities to transact all the business offered to it for all points at which it has offices, since it is not a mere private duty but a public duty which its franchise authorizes it to perform.

3. A contract whereby a telegraph company gives to a railroad company a preference of business over its line to the exclusion of others is an illegal discrimination and cannot excuse the telegraph company for using the line of another company in the transmission of a message between two points in this State between which it has a continuous line.

This was a COMPLAINT, heard before the Railroad Commission, in Raleigh, on the 13th November, 1894.

The complaint was filed August 21, 1894, alleging a violation of the tariff rate prescribed by the Commission for the transmission of telegraphic messages.

The plaintiff alleged that on August 17, 1894, he deliv-

ered a ten-word message to the defendant, at Wilson, N. C., to be transmitted to Edenton, N. C., and was required by the defendant to pay fifty cents for the transmission of the message, and that this was a violation of the rate prescribed by the Railroad Commission of North Carolina.

The defendant answered the complaint on the 31st of August, 1894, through its General Superintendent, J. B. Tree, alleging that the "telegraphic tolls from Wilson, N. C., to Norfolk, Va., are twenty-five cents for ten words, and the rate from Norfolk, Va., to Edenton, N. C., is twenty-five cents, making a total of fifty cents. The message was sent *via* Norfolk because it is the only telegraph route by which the business addressed to Edenton can be handled and turned over to the Elizabeth City and Norfolk Telegraph Company, at Norfolk, Va., as the Western Union Telegraph Company has no commercial office at Edenton, N. C."

The case was assigned for hearing at a session of the Commission at Raleigh on November 13, 1894, when J. B. Tree, Superintendent of the defendant company; N. C. Pamplin, Manager of the defendant company at Norfolk, Va.; E. C. Hudson, Manager of the defendant's office at Wilson, N. C.; M. F. Bond, Manager of the Elizabeth City and Norfolk Telegraph Company, at Elizabeth City, N. C., appeared and were examined as witnesses on the part of the defendant.

The defendant also put in evidence the contract between the Western Union Telegraph Company and the Elizabeth City and Norfolk Telegraph Company, and the contract between the Western Union Telegraph Company and the Norfolk and Southern Railroad Company, while the Western Union Telegraph Company submitted the exceptions or limitations, also hereinbelow incorporated, to the use or to the legal force and effect of the latter paper.

LEAVELL v. TELEGRAPH COMPANY.

It was agreed that, while the complaint and answer were informal, the case should be heard upon its merits, as an allegation on the part of the plaintiff of a violation of the rates prescribed by the Commission and a denial on the part of the defendant of the allegation, with leave to both plaintiff and defendant to amend the same in the progress of the case if desired.

The following facts were found by the Commission :

1. The plaintiff, on August 17, 1894, delivered a message of ten words to defendant's agent at Wilson, N. C., and requested him to forward the same at once to Edenton, N. C., at the same time tendering the agent twenty-five cents to pay for the transmission of the message. The defendant's agent demanded fifty cents for the transmission of the message, explaining why he did so, and showing the plaintiff his tariff book in which Edenton was marked as an office which could be reached only by passing over the wires of another Telegraph Company. The plaintiff paid the sum demanded, protesting that it was a violation of the rates prescribed by the Railroad Commission of North Carolina, and declaring that he would seek redress.

2. Wilson and Edenton are both towns situated in the State of North Carolina.

3. When the message reached Norfolk, Va., it was transferred to the office of the Elizabeth City and Norfolk Telegraph Company and sent over the wire of this last named company to its destination.

4. There is a corporation duly organized and incorporated according to law, under the name of the Elizabeth City and Norfolk Telegraph Company, engaged in the transmission of telegraphic messages upon a line extending from the town of Edenton, and through the town of Elizabeth City, in North Carolina, to the towns of Portsmouth and Norfolk, in the State of Virginia : that the said line was, at the time

mentioned in the complaint, and is now, operated and controlled exclusively by the Elizabeth City and Norfolk Telegraph Company, and was not then, and is not now, operated by or under the control of the defendant.

These facts are found from the contract between the defendant and the Elizabeth City and Norfolk Telegraph Company, and the testimony of the witnesses.

5. That the shortest and only route by which a message could have been or could now be transmitted from Wilson to Edenton traversed a part of the State of Virginia.

6. That just prior to the 19th day of December, 1888, the defendant controlled and operated a line of telegraph along the track of the Norfolk and Southern Railroad Company, from the town of Berkley, in the State of Virginia, to Edenton, in the State of North Carolina, passing through the said town of Elizabeth City, and on said 19th day of December, 1888, entered into an agreement with the said Norfolk and Southern Railroad Company for the maintenance and operation of said telegraph line. ( The pertinent clauses are referred to in the opinion of Associate Justice CLARK. )

7. That since said 19th day of December, 1888, the defendant has operated said line under said contract.

These facts are found from the above contract and testimony of the witnesses.

8. That there is a telegraphic office at Edenton, which is operated by an agent who is in the employment of the said railroad company, but no commercial messages are transmitted at said office.

9. That commercial messages are transmitted at other offices on said line, viz., Centreville, Moyock and Hertford, and that these said offices are operated by agents who are in the employment of the railroad company. These facts are found from the testimony of the witnesses.

10. That the defendant refuses to transmit commercial messages at the two offices of Edenton and Elizabeth City, because, as stated by its witnesses, these offices, if retained, as they are at the depots, would afford very little accommodation to the public, while to open offices up in the towns would require an original and a continuous outlay which the business, especially if divided with the Elizabeth City and Norfolk Telegraph Company, would not justify, and because in this connection the defendant company does not wish, or deem it good faith, to interfere with the business of that company, because the single wire now strung along the line of the railroad could not properly accommodate both the railroad and the public business, the latter being increased by doing commercial business at Edenton and Elizabeth City, while the business would not justify the expense of erecting and maintaining another wire along the road; that the defendant company had opened commercial telegraph offices at the depots at Moyock and Centreville and other places where such offices are open along the Norfolk and Southern Railroad, because the Elizabeth City and Norfolk Telegraph Company did not have offices at these places, and this action on the part of the defendant was required in order to afford any telegraph facilities to the public.

11. That on the 19th day of April, 1880, the defendant entered into a contract with the Elizabeth City and Norfolk Telegraph Company.

12. That by its contract with the Norfolk and Southern Railroad Company the defendant has a continuous line by which messages may be transmitted from Wilson to Edenton, and other points in North Carolina, but which line traverses a part of the State of Virginia, passing through the city of Norfolk.

This fact is found from the testimony of Mr. Tree.

13. That the telegraphic offices at Centreville, Moyock and Hertford on said line are operated by men in the employment of the railroad company, and the rate prescribed by the Railroad Commission is observed.

This fact is found from the testimony of Mr. Tree.

14. In the transmission of messages between Wilson and Edenton, over the lines of the two telegragh companies, *i. e.*, between Wilson, N. C., and Norfolk, Va., over the lines of the Western Union Telegraph Company, and between Norfolk, Va., and Edenton, N. C., over the lines of the Elizabeth City and Norfolk Telegraph Company, messages were, and are, booked both from Wilson and from Edenton to Norfolk, and never to any point beyond Norfolk; and, at Norfolk, these messages are handled and treated in all respects as if they originated in Norfolk or were received there for delivery in that city—the receipt, handling and transmission of these messages in Norfolk, and the liability of the two telegraph companies concerned in their transmission corresponding to a rebilling of goods between separate and independent lines of transportation in the course of a transit, embracing a distance covered by both lines; the transaction in such a case differing entirely from the ordinary relay of a message at an ordinary relay office of the Western Union Telegraph Company between two of its own lines.

15. That the telegraph office at Edenton, mentioned in finding 8, is at the railroad depot, about a third of a mile from the business center of the town, and no commercial telegraph business is done there, while the office of the Elizabeth City and Norfolk Telegraph Company, which is open for commercial business, is up in the business center of the town.

16. That by finding 12, the Commission means only to find that it would be physically possible to connect the

wires of the Western Union line between Wilson, N. C., and Norfolk, Va., with the wire of the Western Union line along the Norfolk and Southern Railroad, so as to make the line physically and electrically continuous; but the witnesses testified that the business, both of the railroad and of the public, would be thus embarrassed and delayed rather than advantaged.

17. The twenty-sixth section of the act creating the Railroad Commission provides: "The said Commissioners are hereby authorized and required to make, or cause to be made, just and reasonable rates of charges for the transmission of messages by any telegraph line or lines doing business in the State."

18. That in pursuance of said section, the Commission, on May 6, 1891, made and prescribed the following standard telegraphic rates:

"On and after June 1, 1891, all telegraphic messages having their origin and terminating within this State will be charged as follows:

"Ten body-words or under, twenty-five cents.

"Over ten words, two cents for each additional word."

From these facts the Commission concludes:

1. That the telegraphic office at Edenton, on the line of the Norfolk and Southern Railroad, is under the control of the defendant, and that the operator in said office, although employed by the said railroad company, is the agent and operator of the defendant.

2. The telegraphic message transmitted by the defendant over said line of the Norfolk and Southern Railroad Company from or to Edenton, to or from Wilson, or any other point in North Carolina, does not constitute commerce between the States, although traversing another State in the route, and is subject to the rates prescribed by the Commission.

3. That defendant cannot be heard to say that it did not send the message mentioned in this case over its own line from Norfolk to Edenton.

4. That the charge of fifty cents mentioned in this case was in violation of the rates prescribed by the Commission.

Wherefore, it is adjudged by the Commission, and so ordered, that defendant refund to plaintiff the sum of twenty-five cents, the excess above the rates allowed by law, and that said defendant desist from further violation of the rates prescribed by the Commission for transmission of messages from Wilson to Edenton.

From this judgment defendant prayed an appeal to the Supreme Court.

The defendant made no exceptions to the findings of fact, but filed the following exceptions to the conclusions of law:

"The defendant excepts to the conclusions of law and to the orders and adjudications of the honorable Board of Railroad Commissioners, in this case—

"1. Because said Board erroneously finds, as conclusions of law, (a) that the telegraphic office at Edenten, on the line of the Norfolk and Southern Railroad, is under the control of the defendant; and (b) that the operator in said office, although employed by the said railroad company, is the agent and operator of the defendant.

"2. Because said Board finds, as conclusions of law, (a) that a telegraphic message transmitted by the defendent over said line of the Norfolk and Southern Railroad Company from or to Edenton, to or from Wilson, or any other point in North Carolina, does *not* constitute commerce between the States, although traversing another State in the route: and (b) that such transmission of a telegraphic message *is* subject to the rate prescribed by the Commission,

which conclusions are not only erroneous but also irrelevant to the facts of this case as found by said Board itself.

"3. Because said Board did *not* find as conclusions of law, (*a*) that a telegraphic message transmitted by the defendant over its own line, from Wilson, N. C., to Norfolk, Va., and by the Elizabeth City and Norfolk Telegraph Company over its line, from Norfolk, Va., to Edenton, N. C., under the facts conceded and found in this case, *does* constitute commerce between the States; and (*b*) that such transmission of a telegraphic message is *not* subject to the rates prescribed by the Commission, which conclusions and adjudications would have been at once sound in law and relevant in fact.

"4. Because said Board erroneously decides and adjudges that the defendant cannot be heard to say that it did not send the message mentioned in this case over its own line from Norfolk to Edenton, *i. e.*, decides and adjudges, that the defendant cannot be heard to say that that occurred in this case which said Board itself finds did occur therein, viz., that the message in question was in fact sent from Norfolk to Edenton over the line of the Elizabeth City and Norfolk Telegraph Company.

"5. Because said Board erroneously decides and adjudges, that the charge of fifty cents, mentioned in this case, was in violation of the rates prescribed by the Commission.

"6. Because said Board erroneously adjudges and orders, (*a*) that the defendant refund to the plaintiff the sum of twenty-five cents; (*b*) that said sum of twenty-five cents is the excess above the rate allowed by law, which adjudication, upon the facts found in this case, is itself in violation of the rate prescribed by the Commission; and (*c*) that the defendant desist from further violation of the rate prescribed by the Commission for transmission of messages from Wilson to Edenton.

"7. Because each and every of the above conclusions of law, orders and adjudications is not only erroneous and unwarranted by the facts or the law, but is also such as the said honorable Board has no jurisdiction and no lawful power to find or to render."

It is agreed that the copies of the contract between the Western Union Telegraph Company and the Elizabeth City and Norfolk Telegraph Company, and also the contract between the Western Union Telegraph Company and the Norfolk and Southern Railroad Company, as printed in the Albea case, are correct, and that copies of these papers may be filed in the papers of this cause as correct copies of the original contracts.

*Attorney General*, for plaintiff.
*Mr. Robert Stiles*, for defendant (appellant).

CLARK, J.: In *Express Co.* v. *Railroad*, 111 N. C., 463, this Court affirmed the constitutionality of the act (Ch. 320, Acts 1891) establishing the Railroad and Telegraph Commission. In *Mayo* v. *Telegraph Co.*, 112 N. C., 343, it sustained the power of such Commission under Section 26 of said act, to establish rates for telegraph companies. In *Railroad Commisson* v. *Telegraph Co.* (Albea's case), 113 N. C., 213, the Court held that telegraphic messages transmitted by a company from and to points in this State, although traversing another State in the route, do not constitute inter-state commerce and are subject to the tariff regulation of the commission. In this it followed the unanimous opinion of the Supreme Court of the United States, delivered by FULLER, C. J., in *Railroad* v. *Pennsylvania*, 145 U. S., 192. To the same purport, *Campbell* v. *Railroad*, 86 Iowa, 587.

In the present case the commission find as a fact that "the defendant has a continuous line by which messages

may be transmitted from Wilson to Edenton and other adjacent points in North Carolina, but this line traverses a part of the state of Virginia, passing through the city of Norfolk;" and it properly holds upon the evidence "that the telegraph office at Edenton is under the control of the defendant, and the operator, though employed by the railroad company, is the agent and operator of the defendant." It necessarily follows from this state of facts that as the defendant could have sent the message the whole distance over its own line, it can not be heard to say that it did not do what it ought to have done and thus collect 50 cents for the message instead of 25 as allowed by the commission tariff. The defence set up that in fact it only carried the message to Norfolk and then paid another company to forward it to Edenton can not be regarded when it might itself have completed the delivery of the message. The defendant seeks to excuse itself on the plea that it has only one wire to Edenton and that this is fully occupied at that office by the work it does for the railroad company. But it is the duty of the telegraph company to have sufficient facilities to transact all the business offered to it for all points at which it has offices. If the press of business offered is so great that one wire or one operator at a joint is not sufficient it is the duty of the company to add another wire or an additional employee. It is not a mere private business but a public duty which the defendants by their franchise are authorized to discharge. It is further to be noted that in giving to the railroad company the preference in the use of their line to Edenton, while at other points, as Moyock, Centreville and Hertford on the same line, the public is admitted to the use of the wire, the defendant is making a forbidden and illegal discrimination in favor of one customer and against the public at large, as was intimated in Albea's case, *supra*, 113 N. C., on page 226. The findings.

of fact and evidence are fuller, and present a somewhat different and stronger case against the defendant than in Albea's case. By Section 11 of the defendant's contract with the railroad company the defendant remains owner of the telegraph line to Edenton, N. C., and its belongings which are to remain "part of its general telegraph system" and "to be controlled and regulated by the telegraph company." Section third of the contract gives the railroad messages precedence over commercial business but stipulates that when railroad business shall require the exclusive use of one wire the telegraph company shall on sixty days notice furnish material for a second wire, which second wire shall be used for railroad business exclusively, and such commercial business as can be done without interfering with railroad business. Section 6 provided that where the railroad company shall open offices, the operators "acting as agents of the telegraph company" shall receive such commercial and public telegrams as may be offered, collecting rates prescribed by the telegraph company, and render monthly statements and pay over the receipts to the telegraph company. Section 7 provides that whenever the volume of business at any point justifies it, the telegraph company shall put in an additional operator. It will be thus seen that the line to Edenton is an integral part of the defendant's general telegraph system. It is only by virtue of its franchise as a telegraph company that it can operate its line to Edenton at all. It cannot discriminate at that point in favor of or against any customer. It can not substract itself from obedience to the rates prescribed by the authority of the State, acting through the Commission, by a contract giving one customer, the railroad, preference in business and pleading that such business occupies the only wire it has. The discrimination is itself illegal. Besides, if it were not, the small cost of an additional wire, which it is common

knowledge does not exceed ten dollars per mile, fur-
nishes no ground to exempt the defendant from furnish-
ing the additional facility to do the business for all.   The
charge of a double rate between Edenton and other points
in North Carolina is a far heavier imposition upon the pub-
public than the cost of the additional wire to defendant,
and is just the kind of burden and discrimination which
the Commission was established to prevent.   In Albea's
case, *supra,* no commercial message was tendered, and the
point now decided was not presented by the record.   The
ruling of the Commission is in all respects

Affirmed.·