CORPORATION COMMISSION v. THE SEABOARD AIR LINE.
SYSTEM.

(November 27, 1900.)

1. *Carriers—Railroads —Corporation Commission—Freight Rates—Car-Load.*

> The Corporation Commissoin may fix freight rates and provide that ten tons shall be the minimum car-load ror shipping fertilizers.

2. *Pleadings—Appeal—Carriers—Public Laws—Private Laws.*

> A corporation, to take advantage of a provision in its charter as a defense, must specifically plead it, a charter being a private statute.

CIVIL ACTION by State of North Carolina on the relation of the North Carolina Corporation Commission against the Seaboard and Roanoke Railroad Company, the Raleigh and Gaston Railroad Company, the Durham and Northern Railroad Company, the Raleigh and Augusta Air Line Railroad Company, the Pittsboro Railroad Company, the Palmetto Railroad Company, the Louisburg Railroad Company, and the Roanoke and Tar River Railroad Company, heard by Judge *Frederick Moore,* at October Term, 1899, of WAKE Superior Court. From a judgment sustaining the order, the defendants appealed.

*Battle & Mordecai,* and *Simmons, Pou & Ward,* for plaintiff.

*J. D. Shaw, W. H. Day,* and *J. B. Batchelor,* for defendants.

DOUGLAS, J.   This is a proceeding originated before the Corporation Commission, in the exercise of its statutory

duty to regulate freight rates. It was appealed by the
defendants to the Superior Court, and thence to this Court.
On the 27th day of April, 1899, the plaintiff commission
issued an order providing that "on and after the 15th day of
May, 1899, the maximum freight rates on fertilizers on all
roads in this State will be as follows (specifying the rates
per ton for different distances). On less than car-load ship-
ments, rates may be made 20 per cent higher than above."
This order is headed, "C. L., Ten (10) Tons, Minimum."
This, we presume, means that the minimum car-load shall
be taken as 10 tons, and this seems the bone of contention.
The defendants filed the following exceptions before the
commission, all of which were overruled: "The said rail-
road companies except to the order of the North Carolina
Corporation Commission, circular No. 1: First. Because the
said reduction in the minimum car-load weight is directly
antagonistic to the effort being made generally to reduce ex-
penses through the furnishing of equipment of larger capac-
ity, and involves an increase in the cost of transportation.
Second. Because the said rates are not in themselves reason-
able, or just, but the same are unreasonably low; would fail
to yield a just and reasonable revenue for the service, and
these defendants would thereby be deprived of the equal pro-
tection of the laws, contrary to the Constitution of the
United States, Art. XIV, sec. 1, and without due process of
law, would be deprived of their property, contrary to the
Constitution of the United States, Art. XIV, sec. 1. Third.
Because the figures established for the tons, minimum, were
unreasonably low, even when applied on car-loads of fifteen
tons minimum; were protested against before the North Caro-
lina Railroad Commission, and only accepted by the carriers
after the fifteen tons minimum in basis was made a part
of the tariff, and then in so far as the carriers composing

the Seaboard Air Line System are concerned, with the understanding that they would be given a trial for the season of 1898-'99 only.    Fourth.  Because circular No. 1 makes no exceptions in favor of weaker lines, whose earnings are at a low rate per mile, which lines are unable to exist at the low rate thus sought to be instituted.    Fifth.  Because such rates unjustly reduce the revenues of lines formerly allowed a percentage of rate above the stronger, or standard, lines, thus resulting in an unfair reduction, greater in the case of one line than another."    At the hearing on appeal before the Superior Court, the defendants abandoned all contentions that the rate was unreasonable.    This practically disposes of all exceptions but the first.

It is true that the defendants in the Superior Court introduced, among other evidence, the original charters of the Raleigh and Gaston Railroad Company and the Seaboard and Roanoke Railroad Company, and contended that the provisions of those charters, passed prior to the adoption of the Constitution of 1868, exempted those roads from the operation of any order of the Corporation Commission reducing passenger or freight rates below the minimum charges allowed in said acts.    Whatever merit there may be in this contention is not now properly before us, as it was not included in the defendants' exception to the order of the commission.    Being a personal exemption, depending upon a private statute, it does not come within the judicial cognizance of the Court, and must be specifically pleaded in bar. Not having been so pleaded, it must be deemed waived, at least as far as the present case is concerned.    What might have been the effect of such a plea is not before us, but its efficiency may well be questioned, in view of chapter 68, of the Private Laws of 1899. *Cheraw and S. R. Co. v. Commissioners of Anson,* 88 N. C., 519, 522; *Keokuk and W. R. Co. v. Missouri,* 152 U. S., 301, 317.

The contentions of the defendants were ably presented, but do not seem to us to touch the real point at issue. They are best recited in the words of the defendants' brief, as follows: "The defendants contend that the said commission possesses no powers in regard to regulating freight charges except such as are conferred on it by this act, and that a diligent search of this act does not disclose a section or clause conferring such power, and that the circular prescribing that the minimum car-load should be ten tons is *ultra vires*—an arbitrary and unwarranted invasion of the rights of the defendants to conduct and manage their own manner of conducting their business; such right being secured to them by this charter contract with the State. If the commission has the power to order what number of tons shall be a minimum car-load, then it has the same power to order what number of tons shall be a maximum car load. It is conceded that the commission, except as to the R. and G. R. R. Co., and S. and R. R. R. Co., under the acts creating it, has the right to order what rates the defendants shall have for fertilizers in car-load lots, provided their rates be reasonable. This is a very different power from the one attempted to be asserted in this case. One allows the railroads to build and equip their roads in a manner that they deem likely to prove both useful and profitable. The other, if conceded, is the power to destroy. If the commission has the power to order that ten tons shall be a minimum car-load, then it has the power to order that one ton shall be. The concession that the commission has the power to order the building of a suitable depot at a certain station is a different power from ordering what dimension such depot shall be. As well concede that the commission denote the weight of rail to be used; whether it shall be iron or steel; whether the locomotive shall be swift or slow, and how swift and how slow;

whether the trains shall be heavy or light, and how heavy and how light—in a word, that the Corporation Commission is the sole judge of both what is useful or profitable in the operations of railroads in North Carolina." This contention seems based upon an entire misunderstanding of the action of the commission. It assumes that, when the commission ordered that ten tons should constitute a minimum car-load, it intended to regulate the actual amount that should be carried in any one car at any one time. Nothing could have been much further from its intention. Its order evidently had no relation to the carriage of the freight itself, but simply to the rate of compensation to be charged therefor. Translated into plain English, it means that the published rates are based upon individual shipments of ten tons, or over, and that when less than ten tons are shipped the carrier may charge 20 per cent more than the standard rates. The term "minimum car-load" is clearly a misnomer, perhaps derived from former conditions that have ceased to bear any relation to each other. It is common knowledge that an actual car-load (that is, a car filled with one shipment) can be more cheaply and conveniently transported than one containing several shipments consigned to different stations, and perhaps at different stations. There is less handling, and less risk of mistake or loss. We presume that originally an actual car-load fixed the car-load rate, but when cars became larger, and their capacity greater than the average wholesale shipment, it was deemed just and proper to fix upon an arbitrary car-load as the standard of rates, in order to prevent what would otherwise amount to a large average increase. The term "car-load rates," having acquired a settled meaning by long and general use, was probably retained purely as a matter of convenience. Whatever may have been its origin, its meaning now is purely arbitrary, and well calculated to mislead, as it

seems to have done in the present case; and yet the term seems to be universally used by railroad men, as well as by different railroad commissions.

As, therefore, the commission has simply said, in effect, that the specified rates shall apply to all shipments of ten tons, or over, without any attempt whatsoever to regulate the actual mode of transportation, the only remaining question is as to the power of the commission to fix rates. That such rates are reasonable, is admitted by the defendants. That being reasonable, they were within the authority of the commission, aside from any alleged exemptions by charter, can not be questioned in view of the provisions of the statutes and our recent decisions. Laws 1891, c. 320; Laws 1897, c. 206; Laws 1899, c. 164; *Atlantic Exp. Co. v. Wilmington and W. R. Co.,* 111 N. C., 463; *Leavell v. Telegraph Co.,* 116 N. C., 211, 220; *Caldwell v. Wilson,* 121 N. C., 425, 472; *Abbott v. Beddingfield,* 125 N. C., 250; *In re Railroad Com'r Cases,* 116 U. S., 307; *Reagan v. Trust Co.,* 154 U. S., 362, 394. The judgment of the Court below is affirmed.

Affirmed.