CORPORATION COMMISSION v. RAILROAD—"INDUSTRIAL SIDING CASE."

(Filed December 12, 1905).

*Corporation Commission, Powers of—Sidetracks to Industries—Reasonableness of Order—Evidence.*

1. Under sub-head 15 of section 2, chapter 164, Laws 1899, authorizing the Corporation Commission to require the construction of sidetracks to industries when the revenue accruing from such sidetrack is sufficient within five years to pay the expenses of its construction, an order requiring the railroad to construct a spur siding for the use of a lumber plant to hold four cars, about one and a quarter miles from a station, is not unreasonable, where it appears that the lumber shipped from said siding in two years would yield a revenue of $6,000.00 to the railroad, and the cost to the defendant of constructing it (the grading and crossties being furnished by the lumber company) would be about $200.00.

2. Evidence that the plaintiff was permitted to show that a few years ago the defendant maintained a sidetrack at this same spot for two years without any inconvenience or accident, was competent to show the practicability of a sidetrack being established at this point.

BROWN, J., dissenting.

ACTION by State *ex. rel.* North Carolina Corporation Commission, upon petition of the Round Pine Lumber Co., against the Seaboard Air Line Railway, heard by *Judge M. H. Justice* and a jury, on appeal from order of the commission, at the September Term, 1905, of the Superior Court of WAKE. From a verdict and judgment thereon, the defendant appealed.

*H. E. Norris* and *Seawell & McIver* for the plaintiff.
*T. B. Womack* and *Pou & Fuller* for the defendant.

CLARK, C. J. The Corporation Commission Act, Laws 1899, chapter 164, section 2, enumerates in twenty-six sub-

heads the powers conferred upon the Corporation Commission. Among these, sub-section 15 authorizes the commission, "To require the construction of sidetracks by any railroad company to industries already established or to be established, provided it is shown that the proportion of such revenue accruing to such sidetrack is sufficient within five years to pay the expense of its construction," and further restricting the power by forbidding the commission to require the construction of any sidetrack more than 500 feet.

The power of the General Assembly to establish a commission to supervise and regulate the rates and operations of *quasi-public* corporations exercising public franchises has been too often decided in the State and Federal Supreme Courts to be again discussed. The matter has been discussed, with the citation of authorities, *Railroad Connection case,* 137 N. C., 14 *et seq.; Corporation Commission v. Railroad (Rate case),* 127 N. C., 283; *Express Co. v. Railroad,* 111 N. C., 463, and in many others, among them *Corporation Commission v. Railroad ("Track Scales case"),* at this term.

As to this special matter, which arises under sub-head 15, authorizing the commission to require the establishment of sidetracks for the use of industrial plants, there is, in view of the great industrial development of the State, scarcely any power granted to the commission that is of greater importance. Owing to the exigencies of their business as well as the greater cost of land immediately at railroad stations and in towns, many factories, and especially most lumber plants, are usually situated at some distance from any passenger and freight station, though ordinarily on the line of some railroad. To require their products, which are usually shipped in carload lots, to be hauled to a distant station, often over bad roads, when the trains, perhaps, pass within a few yards of the plant, would entail a great and useless expense to the great discouragement of such enterprises in our midst. To avoid this, the railroads, whenever the receipts, in their judgment,

will justify it, have for years been putting in such sidings, upon which empty cars are placed when called for, and when loaded are taken away by some passing train. Such sidings are not passenger or freight stations, named in sub-sections 12, 13, 13a and 14, and have not (except possibly in rare instances) any agent.

Prior to the enactment of this provision of the statute, the establishment of such sidings rested in the arbitrary will of the common carrier, who could also discontinue such sidings at will. Such power, it will be seen at once, placed the industrial development of the State at the mercy of the railroad management, which could mar the prosperity of any plant along its line by refusing a siding, or arbitrarily discontinuing it, if established. This power could be used for both political and pecuniary advantage. Whether it was ever so used or not the General Assembly, while not prohibiting the carrier from continuing to establish such sidings at its pleasure, deemed it wise to take the power of refusing to grant or continue such sidings out of the arbitrary will of the common carrier by authorizing the Corporation Commission to require the establishment of such sidings in proper cases. It did not, however, substitute the arbitrary power of the commission for the arbitrary power of the carrier, but it gave the former authority to require such sidings only when the "revenue accruing from such sidetrack is sufficient within five years to pay the expense of its construction," and subject also to a review of the reasonableness of such order on appeal to the Superior Court, and by further review as to the rulings on the law to this court. By a subsequent act, Laws 1903, chap. 444, amended by chap. 693 of the same year, a penalty is imposed for refusing to receive loaded cars at such sidetracks as well as at regular depots or stations— showing that the Legislature was advertent to the distinction and difference between such sidings and "regular stations."

In the present case, the Corporation Commission, upon

petition of the Round Pine Lumber Company, ordered the establishment of such siding, sufficient to hold four cars, on the line of defendant road, at the 24th mile post from Raleigh, and about one and a quarter miles north of Merry Oaks station. The lumber company agreed to prepare the grade for said siding and to furnish the cross ties for the same, and to have the switch lamp for said siding lighted every night while it should be in existence. The Corporation Commission found that approximately 20,000,000 feet of lumber would be shipped by the lumber company from said siding in two years, yielding a revenue of not less than $6,000 to the defendant, and that the cost to the defendant of constructing the siding, the grading being done and cross ties furnished by the lumber company (as offered), would be about $200, and ordered that, upon the petitioner's doing the grading and furnishing the cross ties, the defendant construct on or before 23 August, 1905, a spur siding as prayed, to hold four cars.

An appeal to the Superior Court was taken upon the ground that the order was unjust and unreasonable; that it would entail considerable and unnecessary cost upon the defendant, which would be taking its property for private purposes without compensation; that the commission had no right to make the order; that the petitioner's mill was 800 yards from the defendant's track, and hence the petitioner could not use the siding without hauling that distance or constructing a tram road; and, lastly, that putting in the siding would increase the hazard in operating the defendant's road.

Upon appeal, in the Superior Court, three issues only were submitted, and without exception: 1. Was it reasonable that the defendant be required to construct the spur siding for the convenience of the petitioner as prayed for? 2. Is the spur siding a necessary convenience for the use of the petitioner in the shipment of freight from its saw mill? 3.

Will the revenue accruing to the defendant from such spur or sidetrack from the shipment of freight, within five years, be sufficient to pay the expenses of its construction? The jury responded "yes" to each of these issues and judgment was entered, reaffirming the order made by the Corporation Commission, but extending the time for its execution till 3 November, 1905.

Upon appeal to this court the defendant frankly admits in its brief that "the order appealed from does not lessen the revenues of the road, but distinctly tends to increase the same," and rests its case almost entirely upon the allegation that putting in the sidetrack would increase the hazard of operating its road by reason of the additional switch required. But this point, if it could be made one of law, is not raised by the tender and refusal of an issue as to such alleged fact, nor was it presented, as might probably have been done, by an appropriate prayer upon the first issue. It was presented as an issue of fact by the argument and evidence, on the first issue, to the jury on the trial and the finding upon the issue was adverse to the contention of the defendant. There was neither any prayer for instruction refused, nor any exception to the charge.

If it is competent for us to take judicial notice of such matters, we should say that while there is some danger that this switch may be misplaced, there is also risk as to any other switch on the line of the defendant's road, just as there is danger that any rail if not renewed may become worn, or any cross tie if not removed in time may become rotten, and cause derailments; but these are risks necessarily incident to the defendant's business and to be guarded against by its diligence, and certainly the supposed danger from adding one switch to the great number now on the defendant's line is not a sufficient cause, as a matter of law, to reverse the judge's order made upon the responses to the issues submitted to the jury, without exception from the defendant and

without a prayer for instruction upon this aspect of the case.

There was, as already stated, no exception to the charge, and the only exception to the evidence is that the plaintiff was permitted to show that a few years ago the defendant's road maintained a spur or sidetrack at this same spot for two years, without inconvenience or accident. This was competent, certainly to show the practicability of a sidetrack being established at that point, and requires no serious consideration. Indeed the argument in this court was chiefly upon the evidence whether it showed the order of the commission to be a reasonable one, which was properly a matter for consideration by the jury and which has been passed upon by them under instruction from the court with which the defendant was satisfied, as it filed no exceptions thereto. There was evidence, too, that the facilities offered the petitioner at Merry Oaks were entirely inadequate for the accommodation of its shipments, aside from the evidence that it would add $5 to $8 to the cost per car load, if the petitioner were required to ship from that point, and that it would be impossible to haul from the saw mill to Merry Oaks in the winter at all.

We affirm the judgment of the Superior Court, and as the date of its execution, 3 November, 1905, has now passed, final judgment will be entered here directing the execution of the work in the same terms as prescribed by the judgment of the Superior Court, on or before 15 February, 1906. This course was pursued in the *Railroad Connection case,* 137 N. C., and in other cases therein quoted on page 21.

Affirmed.

CONNOR, J., concurring. For the reasons set out in the opinion and upon the authority of the cases cited, I concur in the opinion of the court that the statute confers upon the commission the power to require the construction of sidetracks upon the terms and conditions prescribed. Whether

INDUSTRIAL SIDING CASE.

the order is a reasonable one, was submitted to the jury, and answered by them as set out in the record. To this there was no exception. In view of the fact that the cause was tried in that way, I do not care to discuss the question—whether what is a reasonable regulation is a question of law for the court or a fact to be submitted to the jury. The usual rule undoubtedly is that what is a reasonable time, or a reasonable notice, or reasonable regulation upon the facts admitted, or found by the jury, if disputed, is a question of law. The practice in regard to the validity of orders made by the Corporation Commission not being well settled and not having been discussed in this case, I do not wish to be understood as expressing any opinion in regard to it. I do not think the exception to His Honor's ruling upon the question of evidence is reversible error. There are expressions in the opinion, to which I cannot give my assent, not being, in my opinion, pertinent to the questions presented for our decision. I simply concur in the disposition made of this case.

WALKER, J., concurs in the concurring opinion of CONNOR, J.

BROWN, J., dissenting.