Defendants, the Atlantic Coast Line, Atlantic and North Carolina Railroad, and Southern Railway, intending to carry out an order of the Corporation Commission directing that they establish and maintain a union passenger depot at the terminus of Walnut Street about 210 feet from the western boundary of the city of Goldsboro, and within the police jurisdiction of the same, were stayed by a temporary restraining order issued in the cause at the instance of plaintiffs.
The material facts connected with the order of the Corporation Commission in the premises are as follows:
For many years the city of Goldsboro and its citizens and the traveling public generally have been insisting upon the erection and maintenance of a union passenger station at Goldsboro, N.C. Pursuant to (394) this sentiment, the city of Goldsboro, on 5 July, 1905, passed the following resolutions:
GOLDSBORO, N.C. 5 July, 1905.
The following preamble and resolutions were adopted by the Board of Aldermen of the city of Goldsboro, at a regular session of said board, on 3 July, 1905:
Whereas, the city of Goldsboro is the terminus of three railroads, and the most important way-station of a fourth railway; and whereas, all of said railroads do a large passenger traffic in said city; and whereas, said railroads have provided absolutely no shelter for passengers entering or leaving their trains; and whereas, the waiting and baggage rooms are not of sufficient size to supply their intended purposes and are not up to date in their appointments: Therefore, be it Resolved, by the Board of Aldermen of the city of Goldsboro, that the Corporation Commission of this State be requested to take speedy action to cause the erection of a proper passenger depot in said city. *Page 319 
 Resolver further, that the clerk of this board transmit a copy of these resolutions, attested by the seal of the city, to said Corporation Commission.
(SEAL.) D. J. BROADHURST, Clerk.
Which said resolutions were laid before the North Carolina Corporation Commission; that in pursuance of said resolutions, the North Carolina Corporation Commission gave notice that it would hear the petition of the city of Goldsboro, at Goldsboro, 4 January, 1906, and thereupon the city of Goldsboro, through its Board of Aldermen, adopted the following resolutions:
GOLDSBORO, N.C. 20 December, 1905.
The following preamble and resolutions were adopted at a meeting of the Board of Aldermen of this city, held this day, to wit:
Whereas, the North Carolina Corporation Commission has given official notice that the petition of this board for the (395) erection of a proper passenger depot in this city has been set for hearing at this place on Thursday, 4 January, 1906: Therefore,be it
 Resolved, by the Board of Aldermen of the City of Goldsboro, that in behalf of the citizens we thank the Commission for their response to our petition; we urge them to require speedy action in giving relief to a long-suffering public, and we express no choice as to the location of the said depot, being willing to abide by the action of the Commission, which represents the traveling public no less than the citizens of Goldsboro.
Resolved further, that a copy of these resolutions be furnished the Commission upon their visit here on 4 January, 1906.
D. J. BROADHURST, Clerk.
That upon said hearing at Goldsboro, 4 January, 1906, the said railroads moved the Commission to continue the proceedings ninety days, in order that they might confer and choose some available site; that on 3 April, 1906, the railroad companies reported to the Corporation Commission that they had agreed upon the location of said union passenger station, and accompanied their report with a blue-print, showing tracks connected therewith; that said site selected was at the foot of Walnut Street, about four blocks from the present stopping-place of the trains of said railroads; that thereupon all the plaintiffs filed exceptions to said report, alleging as ground therefor that such location *Page 320 
would greatly inconvenience the citizens of Goldsboro and the traveling public and work irreparable damage to a large proportion of the property-owners of the city of Goldsboro; that thereupon, to-wit, on 3 May 1906, at Goldsboro, after due notice to the city of Goldsboro, to the railroads, and to the parties excepting, the Corporation Commission gave a full hearing to all parties, petitioners and exceptors; that at said (396) hearing the plaintiffs herein were represented by W. T. Dortch, Esq., and appeared in person, and a number of them were examined as witnesses; that the Hon. George Hood, Mayor of the city of Goldsboro, stated that the site agreed upon, or any other that would be acceptable to the Corporation Commission, would be satisfactory to the city of Goldsboro; that after a full hearing of said matters the Corporation Commission found the following facts, to-wit:
"That the location agreed upon is accessible and available for each of the three railway companies; that it is within four blocks of the site used at present by the said railway companies, and that the grounds are sufficient and ample for the construction of waiting-sheds and buildings necessary for the convenience, comfort and protection of the traveling public; and this location will promote the convenience of the traveling public; that there is constant and increasing danger resulting from the operations of the trains on Center Street, and that will, to a great extent, be removed by adopting the proposed site."
And thereupon the North Carolina Corporation Commission ordered that the union passenger station be located at the terminus of Walnut Street, Goldsboro, being the site proposed by the defendant railroad companies; that in obedience to this order of the North Carolina Corporation Commission, and for no other purpose, and with a motive to subserve the public in the best possible way, and in obedience to law, the said railroad companies were at the beginning of this action taking steps to construct tracks leading to the said proposed union passenger station.
No appeal was taken from this order of the Corporation Commission; but on 7 May, 1906, the Board of Aldermen of the City of Goldsboro, by a vote of five to four, passed a resolution of protest against the proposed location on the site selected.
The four minority members filed a dissent and adhered to (397) the original resolution of the board. Defendants, as stated, were preparing to carry out the order of the Commission, when plaintiffs, for themselves and all other citizens of Goldsboro who would make themselves parties, instituted the present suit, claiming that the *Page 321 
order of the Commission and the action of defendants thereunder were without warrant of law. That the three railroads heretofore and for many years had their tracks and operated their trains along Center Street of the city of Goldsboro, and this is the location of all the defendant roads in and through the city of Goldsboro; and they have also for many years past had and used a joint ticket office and waiting-room rented for the purpose in a building on Center Street, near the Hotel Kennon in said town.
The interest of some of the plaintiffs in property claimed to be damaged and the grievances alleged as the basis of their demand are thus stated in the complaint:
"That they are informed and believe, under the charter of said railroad companies, it is their duty to continue said right-of-way along said Center Street. That, as they are informed and believe, the citizens of Goldsboro, relying, as they have a right to rely, on the presumption that the railroad companies, in maintaining their right-of-way, would conform to their charter provisions, and upon the strength of this presumption have made large investments at this point, and the town of Goldsboro has been built up along said street and adjacent thereto, with a view to a permanent location of said railroads along said street.
"That the plaintiffs, relying upon said presumption, have invested large sums at or near said point, and along said Center Street, and on the streets adjacent thereto, and they are of the opinion that the removal of said right-of-way and tracks of said railroad from said street will greatly injure and impair their investments and property rights along said streets adjacent thereto, as well as the commercial interests and conveniences of all the citizens of the city of Goldsboro.
"That some of the plaintiffs, to-wit, H. Weil Brothers and M. E. Robinson, are largely interested in two large and costly (398) hotels, constructed immediately upon the east side of said Center Street, and near said ticket offices of said railroads, and an ice plant immediately east of said right-of-way; and one of the plaintiffs, Charles Dewey, is largely interested in foundry works, established immediately on the western side of Center Street, and all other plaintiffs have other and valuable properties either upon said street or adjacent thereto, which, in their opinion, would be greatly endamaged if the said right-of-way and tracks of said railroads were removed from said street."
Defendants deny that they have any intent to abandon their right-of-way or discontinue the use of their tracks along Center Street for purposes of carrying and delivery of freight; but avow their intention of carrying out the order of the Commission in reference to the passenger *Page 322 
depot and the operation of their passenger trains. That a compliance with the order of the Commissioners will involve some change of the roads in and near Goldsboro to enable the passenger trains to make use of the union depot at the site selected, and no power to do this after the roads have been once located appears in the charters of the companies, so far as same have been examined or put in evidence. Upon the facts, the Judge below dissolved the restraining order, and plaintiffs excepted and appealed.
The Revisal 1905, sec. 1097, subsec. 3, empowers and directs the Corporation Commission to require, when practicable, and when the necessities of the case, in the judgment of the Commission, demand it, any two or more railroads which now or hereafter may enter any city or town to have one common or (399) union passenger depot for the security, convenience and accommodation of the traveling public, and to unite in the joint expense of erecting, constructing and maintaining said union passenger depot, etc., etc.
Another clause of said section confers on the railroads so ordered to construct a depot, the power to condemn land for the purpose, and the section closes with the proviso that nothing in the section shall be construed to authorize the Commission to require the construction of a union depot should the railroad companies have separate depots which, in the opinion of the Corporation Commission, are adequate and convenient and offer suitable accommodation for the traveling public.
The power of the Legislature to enact a statute of this character has been established by numerous and well-considered decisions of this and other courts of supreme jurisdiction and is no longer open to question.Industrial Siding case, 140 N.C. 239; Corporation Commission v. R. R.,139 N.C. 126, and authorities cited.
The Corporation Commission having taken action under the above statute, the right of the parties to the controversy may be made to depend largely upon its true interpretation.
The statute in its principal purpose may be considered as remedial in its nature, and as to that feature will receive a liberal construction. Endlich on Interpretation of Statutes, secs. 107-108. Lewis' Southerland Statutory Construction, sec. 336.
In a note to this citation from Endlich it is said: "In any *Page 323 
classification of acts of Parliament, the most important is that by which they are divided into remedial and penal statutes, or, rather, into such as are construed liberally and such as are construed strictly."
The author in the text further says:
"Of such statutes, as distinguished from penal statutes, more especially is it said that they are to be construed liberally to carry out the purpose of the statute to suppress the mischief and advance the remedy contemplated by the Legislature." (400)
And further:
"The object of this kind of statute being to correct a weakness in the old law, to supply an omission, to enforce a right, or redress a wrong, it is but reasonable to suppose that the Legislature intended to do so effectually, broadly, and completely, as the language used, when understood in its most extensive signification, would indicate."
Another accepted rule of construction is that "whenever a power is given by statute, everything necessary to make it effective or requisite to attain the end is inferred." Southerland Statutory Construction, 508. Endlich on Construction of Statutes, 418.
The first author, at page 518, further states: "It is a well-established principle that statutes containing grants of power are to be construed so as to include all things necessary to accomplish the object of the grant. The grant of an express power carries with it, by necessary interpretation, every other power necessary and proper to the execution of the power expressly granted."
Applying these principles to the case before us, we think it clear that the statute empowering the Corporation Commission where practicable, and under the limitations contained in the act, to require railroads to construct and maintain a union depot in cities and towns, and giving to the railroads subject to such order the express power to condemn lands, will confer on the roads the incidental right to make such changes in their line and route as are necessary to accomplish the purpose designed and to make the depot available and accessible to the traveling public, as contemplated by the act. The authorities cited by the defendant from 70 Fed. Rep., pp. 748 and 940, are to the effect that the right of eminent domain is never implied and can only be exercised under and by virtue of an express grant. Here, as stated, the power of eminent domain is given in express terms to the railroads, (401) which act under the statute and pursuant to orders properly made by the Corporation Commission. We do not think the position of defendant is well taken, that the Corporation Commission can only *Page 324 
act when the roads can connect on the right-of-way as already laid out. Such a construction is altogether too restricted, and if allowed would go far to defeat the beneficent purpose of the Legislature.
The words of the act are general, and the remedy was intended to apply to all the towns and cities in the State where, in the legal discretion of the Commissioners, the move is practicable, the convenience of the traveling public require it, and the existing facilities, in the judgment of the Commissioners, are inadequate.
If this be a correct interpretation of the statute, then it follows of necessity that the plaintiffs must fail in their action. The defendants, having legislative authority to make the proposed change, are acting within their right. So far as now appears, they are only doing, or proposing to do, "a lawful thing in a lawful way;" and in such case, if harm comes to a third person, it is not a wrong for which the law will afford redress. It is damnum absque injuria. Thomason v. R. R. (plaintiff's appeal), ante 322. Broom Legal Maxims (8 Ed.), p. 200; Pollock on Torts (7 Ed.), pp. 126-7, 8 A. and E. Ency. (2 Ed.), 697. The doctrine is well stated in this last citation as follows: "It may be stated as a general rule that if the Legislature, acting within its constitutional limitations, directs or authorizes the doing of a particular thing, the doing of it in the authorized way and without negligence cannot be wrongful. If damage results as a consequence of its being done, it is damnum absque injuria, and no action will lie for it."
The principal objection urged by plaintiffs against the validity of these proceedings is that a railroad company has no right to (402) change its route without legislative authority. That, having once exercised its discretion in locating its line, the power is exhausted, and such location cannot be thereafter changed. The position is sound, as a rule, and the authorities cited in the carefully prepared and learned brief of appellants' counsel are apt to support it. It is not necessary, however, that the power to change a route should be given in the charter or a direct amendment thereto; but, as stated in one of the authorities, "It may be given by charter or by special enactment or by the general railroad laws of the State." Under the construction we have given the statute, there is legislative authority for the proposed change, and the power of eminent domain having been expressly given to the extent required to carry out the purpose of the statute, this position of plaintiff is now without force and the authorities referred to no longer apply. It is further insisted that by sec. 2573 of the Revisal the contemplated change can only be made when sanctioned by a two-thirds vote of the Aldermen of the City of Goldsboro. It may be that *Page 325 
such sanction could be found in the fact that the Board of Aldermen, as such, were the actors who set this proceeding in motion, and, in their resolutions of 6 July, 1905, and 4 July, 1906, unanimous, so far as the record discloses.
But, without passing on this question we are of opinion that this requirement of a two-thirds vote only applies where the railroad, of its own volition and for its own convenience, contemplates a change of route.
It is found in the general railroad law as a clause in the section which confers on the directors of a company the power to voluntarily change their route; and does not apply to cases like the present, where the Corporation Commission, acting under express legislative authority and direction, require the railroad to make the change for the convenience of the general public.
Again, it is insisted that the site selected is not within the corporate limits of the city, and that to permit this (403) contemplated action on the part of the roads would be to sidetrack the city of Goldsboro, to the great damage of the city and the citizens owning property therein; and we are referred to decisions where railroad companies have been restrained from a move of this character at the instance of citizens owning property within the limits of the city or town, and which would suffer depreciation in value by reason of the change. But we do not think this position is borne out by the facts, or that it is available in law to sustain the plaintiffs.
The site selected is at the terminus of Walnut Street, an important and much-frequented street of the city, just 210 feet from the corporate line, within four blocks of the former depot on Center Street and within the police jurisdiction of the city.
There is authority for the position that such placing may be considered within the city as a matter of reasonable construction. Old Ladies' Home v.Hoffman, 117 Iowa 716; Wichita v. Burleigh, 36 Kansas, 34.
But, however this may be, the Corporation Commission the body authorized and required by law to determine the matter, after full and due inquiry, have fixed upon this as the proper site, and they give, as it seems to us, good reason for their decision, as follows: "That the location agreed upon is accessible and available for each of the three railway companies; that it is within four blocks of the site used at present by the said railway companies, and the grounds are sufficient and ample for the construction of waiting-sheds and buildings necessary for the convenience, comfort and protection of the traveling *Page 326 
public; that there is constant and increasing danger resulting from the operation of the trains on Center Street, and that, to a great extent, will be removed by adopting the proposed site."
We do not think, therefore, that the facts support the claim (404) of plaintiffs, that the city of Goldsboro is being sidetracked. And, on the authorities cited to the effect that a citizen of the town, owning property therein, may, under given circumstances, interfere by action to prevent a railroad from removing its tracks from the town limits, they all rest on the basic position that the contemplated move on the part of the railroad is without warrant of law.
Where, as in this case, the railroads are proceeding to an authorized act, and in a lawful manner, there is no legal wrong done the plaintiffs, and the Judge below was right in denying relief. There is no error, and the judgment below is affirmed.
Affirmed.
Cited: White v. Kincaid, 149 N.C. 420; Barger v. Barringer, 151 N.C. 446;Butler v. Tobacco Co., 152 N.C. 419; Commrs. v. Bonner, 153 N.C. 70;S. v. R. R., Ib., 561, 562; R. R. v. Goldsboro, 155 N.C. 363; S. v.R. R., 161 N.C. 273.