STACY, C. J., dissenting.
BARNHILL and WINBORNE, JJ., concur in dissent.
This proceeding originated before the Commissioner of Public Utilities by petition of the plaintiff for a removal of certain restrictions provided in its franchise for operating a passenger motor vehicle between points south of the North Carolina State Line and Asheville, North Carolina, within said State.
The franchise referred to was obtained 10 July, 1933, for the operation of motor vehicles from the South Carolina Line south of Hendersonville, through Hendersonville via Mills River Section, to Asheville, North Carolina. In this franchise the petitioner was prohibited from taking on passengers in Hendersonville destined to Asheville, and from taking on passengers in Asheville destined to Hendersonville.
The petition sets up that the population, respectively, of Hendersonville and Asheville, had greatly increased since the granting of the franchise; that both cities were popular resort cities in a mountainous portion of the State much resorted to for its scenic beauty; and that during the summer months the population of both cities was vastly increased.
It was further alleged that the schedule adopted and followed by the only other franchise carrier operating between these cities did not afford sufficient facilities for passengers either way between the city of *Page 236 
Hendersonville and the city of Asheville; that a large part of the population was denied facilities of transportation between the two points, according to any schedule to which they might conform without great disadvantage and inconvenience to themselves. The petition further pointed out that generally the traveling public has become accustomed to more immediate and better transportation facilities, which resulted in those thus denied them raising a clamor, and producing a strong pressure to be taken on petitioner's cars, which petitioner with difficulty resisted.
The petition pointed out that there was a great necessity for improvement in such conditions, which might be easily met by the facilities at the command of the petitioner, but which petitioner was not allowed to furnish because of the restrictions imposed upon it in its franchise. Petitioner prayed that these restrictions be removed and that it be permitted to take on passengers at the designated points, going to either city.
The matter came to a hearing before the Honorable Stanley Winborne, Utilities Commissioner, in the city of Raleigh, on 31 August, 1938. The record discloses that at that time counsel appeared for the petitioner, Carolina Scenic Coach Company, and also for "the protestant," Atlantic Greyhound Corporation. We assume that the Atlantic Greyhound Corporation, operating motor vehicles between the cities mentioned, had been permitted to intervene and to protest the granting of the relief prayed for by the petitioner.
At this hearing the Commissioner found certain facts, amongst them that the schedules maintained by the Atlantic Greyhound Corporation afforded sufficient facilities for the traveling public over the route designated, and that no further service was needed; and that if any further service was needed the Atlantic Greyhound Corporation was ready, willing, and able to provide the service. Upon what evidence the latter finding was made does not appear in the record.
The Commissioner denied the prayer of the petitioner, and the petitioner appealed to the Superior Court, setting up certain exceptions both to the order of the Commissioner and to the findings of fact upon which it was predicated, and to the conclusions of law reached by the Commissioner, amongst them that the removal of the restriction was not in the public interest. These were overruled.
Following the statute, the Commissioner made up the appeal, or report, and forwarded the same to the Superior Court of Henderson County.
After the matter had been docketed in the Superior Court, the protestant, Atlantic Greyhound Corporation, claiming to do so as a result of notice duly and properly given it by the Utilities Commission, appeared and filed a written motion to have the appeal dismissed, upon several grounds: First, because the Utilities Commission had no authority to *Page 237 
entertain the petition, or enter an order removing the restriction; and, second, because "no appeal lies to the Superior Court from an order denying the prayer of the petitioner." This motion was allowed by Judge Rousseau at the May-June Term, 1939, of Henderson Superior Court, to which the appeal had been certified, in an order dismissing the appeal, and the petitioner appealed to the Supreme Court. Upon the hearing in the Supreme Court, the judgment of Rousseau, J., was reversed. The case is reported as UtilitiesCommission v. Coach Co., 216 N.C. 325.
Before the introduction of evidence at the trial with which the present appeal is concerned, the Utilities Commission and the Atlantic Greyhound Corporation filed a written motion "that the appeal be heard by the presiding judge in chambers, under the provisions of section 1097, C. S., for that the petitioner has not excepted to any findings of fact in the order of the Utilities Commissioner of the State of North Carolina, from which the petitioner appealed." This motion was denied and both the Utilities Commission and the Atlantic Greyhound Corporation excepted.
The trial was de novo and much evidence was introduced regarding the necessity for the service contended for by the petitioner, as bearing upon the propriety, reasonableness, and necessity of removing the restrictions placed upon the petitioner, which prohibited it from taking on and carrying passengers from Hendersonville to Asheville and from Asheville to Hendersonville, points in its route, covered by a schedule represented as convenient and necessary to meet the reasonable demands of passenger traffic and travel between these points. There was evidence contra on the part of the protestant.
The Utilities Commission and the protestant, Atlantic Greyhound Corporation, tendered the following issue: "Does public convenience and necessity require additional intrastate service by bus between Hendersonville and that part of Asheville east of the French Broad River? Answer: ........." The court refused to submit this issue and the Utilities Commission and the Atlantic Greyhound Corporation excepted.
The court submitted the following issue: "Does public convenience and necessity require additional intrastate service by bus between Hendersonville and Asheville by the removal of the restrictions in the petitioner, Carolina Scenic Coach Company's franchise, as alleged in the petition? Answer ..........." Both the Utilities Commission and the Atlantic Greyhound Corporation objected and excepted.
The jury answered the issue submitted by the court "Yes," and, thereupon, judgment was entered ordering that the restrictions placed upon petitioner's franchise be removed, and that it be permitted to accept passengers at Hendersonville and at Asheville and transport them *Page 238 
between these cities. From this judgment the Utilities Commission and the Atlantic Greyhound Corporation appealed. The Utilities Commission, however, did not perfect its appeal and is not a party here.
There were numerous exceptions on the part of the Utilities Commission and the protestant to the instructions given to the jury. They are not reproduced here in detail, because their discussion is not essential to the decision.
In addition to the exceptions noted, the trial judge was requested by the Utilities Commission and the Atlantic Greyhound Corporation to review the exceptions taken to the findings and conclusions of the Utilities Commissioner and pass upon them seriatim, which the court refused to do. This resulted in numerous exceptions by the Utilities Commission and the Atlantic Greyhound Corporation, alike in purport, and addressed to this phase of the case.
As appears from the foregoing statement, this case came here at the Fall Term, 1939, upon an appeal from an order dismissing the plaintiff's appeal to the Superior Court, upon the contention by the Utilities Commission and the Atlantic Greyhound Corporation that no appeal lay from the order of the Utilities Commissioner. The court was of the contrary opinion, holding that such an appeal was proper under the express wording of the statute, cited by appellant in the case at bar — C. S., 1097; Michie's 1935 Code: "From all decisions or determinations made by the Utilities Commission, any party affected thereby shall be entitled to appeal." Also by virtue of chapter 134, Public Laws of 1933, section 12, providing that the Utilities Commissioner and his Associate Commissioners "shall hear and determine such matter, thing, or controversy in dispute, pass upon and determine the issues of fact raised thereon, and the questions of law involved therein, and make and enter their findings and conclusions thereon as the judgment of the said Utilities Commissioner of North Carolina. From the decision ofthe said Utilities Commissioner, or the said Utilities Commission, anyparty to said proceeding may appeal to the Superior Court at term, asdesignated in and under the procedure required by sections 1097, 1098,1099, 1100, 1101, and 1102, Consolidated Statutes," etc.
The principal questions raised here may be summarized: The appellant no longer questions the right of appeal, but contends that the appeal in the instant case is upon matters of law altogether, and should have *Page 239 
been decided by the judge without intervention of a jury; that it was the duty of the judge to pass upon all of petitioner's exceptions separately, and rule upon each of them, as in the practice relating to the reports of referees; that if the matter was triable at all before the jury, the sole question to be determined by the jury was whether or not convenience and necessity required the additional public service which petitioner had pointed out, and that if the affirmative was made to appear by the verdict of the jury, the whole matter should be returned to the jurisdiction of the Utilities Commissioner for him to award the franchise for such service to such person or corporation as he might deem best. Section 1098, Michie's Code.
We do not think the contention of the appellant that no question or issue of fact was raised by the petitioner's exceptions to the findings and conclusions, and to the order of the Utilities Commissioner, can be sustained. While it may be true that the exceptions confuse findings and conclusions of fact with conclusions of law, the findings and conclusions of the Utilities Commissioner are also informal. Petitioner seems to have made a fairly good pattern on the target presented to it. Indeed, in common practice it is often difficult to separate conclusions of fact from conclusions of law. The statute, however, does not require any high degree of formality in this respect, and it is not the practice of this Court to allow mere form to defeat substantial justice, or to disregard pertinent matter for want of proper labeling.
A fair analysis and comparison of the Commissioner's findings and petitioner's exceptions does show that the Commissioner found that the present service rendered by the Atlantic Greyhound Corporation is ample, and that there was no necessity for the service pointed out in the petition, and that the removal of the restrictions from petitioner's franchise was not demanded by the public interest. (We omit matters of inducement and argument leading up to the decision.) The exceptions are sufficient to challenge these findings and, as required by the statute, petitioner directly excepted to the order.
We are not inadvertent to the argument that the reasonableness of the Commissioner's order is the real point at issue, and that this should be regarded and determined as a question of law. The question of reasonableness, in its relation to the relief demanded by petitioner, depends upon the factual situation developed in the de novo trial in the Superior Court, and must be independently considered.
In view of the broad language of the statute — sections 1097-1098, Michie's Code — we are unable, on principle, to distinguish the particular exercise of power here challenged from those which, under precedents established respecting agencies to which the Utilities Commission is successor in jurisdiction and function, were held appealable and referable *Page 240 
to jury trial. Corporation Commission v. R. R., 140 N.C. 239,52 S.E. 941; S. v. R. R., 161 N.C. 270, 76 S.E. 554; R. R. Connection Case,137 N.C. 1, 49 S.E. 191, 206 U.S. 1, 17, 51 L.Ed., 933; S. v. R. R.,145 N.C. 495, 59 S.E. 570; Corporation Commission v. R. R., 185 N.C. 435,117 S.E. 563; Corporation Commission v. Water Co., 190 N.C. 70,128 S.E. 465; Corporation Commission v. R. R., 197 N.C. 699, 150 S.E. 335. The case was, therefore, properly placed upon the civil issue docket and tried before a jury. Sections 1097-1098, Michie's Code.
The exceptions of the protestant, for that the trial judge did not take up the exceptions of the petitioner and rule upon them seriatim, after the practice relating to a referee's report, are untenable. Those exceptions were probably taken in support of the contention that the appeal presented only questions of law. But they involve also the suggestion that the Utilities Commissioner had acted upon some derivative authority, and that his action required confirmation by the court, or some other body, to make it effectual.
The Utilities Commission, or the Utilities Commissioner, with whose order we are concerned, is a State administrative agency of original and final jurisdiction (subject to appeal), and the findings and orders of the Commissioner require no confirmation by any court or other body as they do in the case of a referee. He has no more power to make a reservation of his jurisdiction upon an appeal than the Superior Court has to recognize it, and, in fact, he made none. The statute makes none for him.
Of more significance is the fact that upon appeal the whole matter is heard de novo, and any competent evidence bearing upon the controversy may be heard, regardless of the proceeding before the Commissioner. Issues to which the trial court must look forward have relation both to the pleadings and to the evidence; Clinard v. Kernersville, 217 N.C. 686; Coletrane v.Laughlin, 157 N.C. 282, 72 S.E. 961; and the ruling of the court separately upon exceptions taken to findings of fact by the Commissioner on evidence presented to him, on a totally different and superseded hearing, would not only be futile but erroneous. The question before the Court is not whether the Commissioner shall be sustained in his ruling, but whether the petitioner shall be given the relief prayed for, upon the facts as they are developed de novo in the Superior Court. The proceeding on appeal and the subsequent hearing is more analogous to that from a justice of the peace, at least where issues of fact are involved, as we find them to be here, leaving to the appellate court the unconditioned jurisdiction to find and declare the truth, through its own established procedure. *Page 241 
We think the "protestant" had full benefit of the instruction to the jury that the findings and decision of the Utilities Commissioner wereprima facie just and reasonable, and the evidence was such as to fully apprise the jury of the substance and purport of the order. We see no harm which could come to appellant from this source.
The language used in section 1098 is quite different from section 16 of the Federal Act to regulate commerce (see Act of 4 February, 1887, and amendments), considered in Meeker v. Lehigh Valley Railroad Co.,236 U.S. 412, 430, 59 L.Ed., 644. The latter provides that the "findings and order of the Commissioner shall be prima facie evidence of the facts therein stated." The statute here considered provides only that the "rates fixed, or the decision or determination made by the Commissioner, shall beprima facie just and reasonable." It makes no mention of the use either of the findings or of the determination made by the Commissioner as evidence in the cause. Even if it did, we fail to find error in the trial on this exception. We think the provision that the determination of the Commissioner should be prima facie just and reasonable is of the nature of a legal presumption, which requires only that the petitioner must introduce substantial evidence in support of his case, or run the risk of an adverse verdict. It serves also to put the "laboring oar" — the duty of going forward with the evidence — in the hands of the real "actor," the petitioner, since in the statute the natural position of plaintiff and defendant is reversed, and the State, on relation of the Utilities Commission, is made formal plaintiff. But if there should be created by this statute a situation by which a presumption of fact remains with the jury until their final action, appellant had full benefit of that view.Gallup v. Rozier, 172 N.C. 283, 90 S.E. 209.
Both in appellant's oral argument and in the brief it is urged that the sole question to be determined by the jury, if the case got that far, was that of convenience and necessity involved in the additional service suggested — an abstract question to which the litigant parties might or might not have some relation upon some subsequent hearing before the Commissioner after the jury had reached its verdict. A rather poor compensation this, for the trouble taken by the petitioner and the expense to which it has been put, under encouragement of the statute, which, presumably, and we think on its face, gives it the right to appeal, not probono publico, or to the ultimate advantage of its adversary, but in its own individual interest.
In this State the right of appeal exists only by statute, and neither the litigant parties nor the court itself may take any step that is not authorized by the statute, or a fair inference therefrom. The Superior Court, to which appeals from the orders of the Utilities Commission lie, has its own well understood legal incidents. It is a court of final *Page 242 
jurisdiction and of final resort on matters of fact and, subject to appeal and review on matters of law, its decisions are completely determinative of the controversy properly before it, and its judgments apply both to the subject matter and to the parties of record and their privies. Constitution of North Carolina, Article IV, section 12; C. S., 1439; C. S., 638; Rhynev. Lipscombe, 122 N.C. 650, 29 S.E. 57; Coletrane v. Laughlin, supra;Armfield v. Moore, 44 N.C. 157.
There is no provision in the general law nor in the specially applicable statutes by which the Superior Court could be justified in segregating the question of convenience and necessity, or divorcing it from its relation to the litigant parties, and making of it a floating island to be subsequently captured by the Utilities Commission. Such procedure would make the Superior Court an adjunct to the administrative body, or an intermediate agency in the proceeding before it, so that the verdict of its juries and its judgments might be subordinated to the Utilities Commission for its subsequent final action. For this there is neither law nor precedent.
If petitioner's application could be considered as an original application for a certificate of convenience and necessity, which we doubt, and if upon the hearing the Utilities Commissioner had affirmatively found necessity for the service, he might have awarded the franchise to one party or another, as in his judgment might be best in the public interest. But the Commissioner found to the contrary, and, as the statute permits, actively presented this view in the Appellate Court. The verdict of the jury was adverse to his contention. The question had then become incidental to the rights of petitioner upon its appeal, and had become merged therein. The real question before the board, and before the court, from beginning to end, was whether or not the restrictions ought to be removed from petitioner's franchise in the interest of the public service required. This question was properly heard according to the statute, and the practice of the court, and the verdict and judgment thereupon is final.
In view of the fact that the Utilities Commission has abandoned its appeal and no longer defends its jurisdiction in this respect, if it had any, we question the right of the protestant appellant to bring forward this question on appeal, since it has only a moral probability, no legal assurance, that it may be selected to perform the public service which it has consistently denied to be necessary.
On our construction of the law regulating appeals from the Utilities Commissioner, many of the arguments addressed to the Court raise questions that are political rather than juridical. We have no power to interfere with the Legislature in its distribution and allotment of the powers of government to agencies already created — as, for instance, a *Page 243 
jury — or those created by it, so long as it acts within constitutional limitations.
Other exceptions of appellant have been considered. Some of them are incidentally involved in the foregoing discussion. Others we do not consider of sufficient merit to justify us in disturbing the result reached in this case.
We find
No error.