STATE OF NORTH CAROLINA Ex Rel. UTILITIES COMMISSION OF
NORTH CAROLINA v. GREAT SOUTHERN TRUCKING COMPANY.

(Filed 15 December, 1943.)

**1. Constitutional Law §§ 4c, 17: Courts § 1a: Utilities Com. § 4—**

The jurisdiction of the courts over regulations for "public convenience
and necessity," made by State administrative bodies, in accordance.with
statutes, is neither original nor wholly judicial in character, and it is not
the intent of such statutes that the public policy of the State shall be
fixed by a jury.

**2. Courts § 2b: Utilities Com. § 4—**

While on appeal from the Utility Commission to the Superior Court the
provision of the statute has been interpreted to mean that the trial shall
be *de novo*, it also provides that the decision or determination of the
Commission "shall be *prima facie* just and reasonable." C. S., 1098.

**3. Same—**

Where on petition of an interstate trucking company, operating across
the State, to the Utilities Commission for the privilege of intrastate busi-
ness on part of its lines, the Commission finds, on competent evidence, that
the present intrastate carriers maintain sufficient schedules to meet the
transportation needs of the territory involved in a reasonable manner, on
appeal to the Superior Court, there being no showing sufficient to over-
come the *"prima facie* just and reasonable" disposition of the matter by
the Commission, judgment as of nonsuit was proper.

BARNHILL, J., concurring.

WINBORNE and DENNY, JJ., join in concurring opinion.

SEAWELL, J., dissenting.

APPEAL by Great Southern Trucking Company from *Warlick, J.*, at
March Term, 1943, of MECKLENBURG.

Proceeding before North Carolina Utilities Commission.

The record discloses that on 21 April, 1942, the Great Southern Truck-
ing Company filed petition with the Utilities Commission for franchise
certificate to operate as motor vehicle carrier between Charlotte and
Winston-Salem *via* Mooresville, Statesville and Mocksville, alleging as
justification for the license "public convenience and necessity."

Pursuant to publication of notice, the matter came on for hearing
before the Commission beginning on 19 May, 1942, at which time
Frederickson Motor Express Corporation and Smith Transfer Corpora-
tion appeared and interposed objections. They were thereupon made
parties protestant to the proceeding. The record fails to disclose the
order making them parties or their objections, if in writing. But it
appears in the evidence that they are intrastate carriers by truck oper-
ating over the proposed route.

In summary, the findings and determination by the Commission, filed 14 July, 1942, follow:

1. That the applicant operates under interstate rights between points in North Carolina, including Charlotte, Mooresville, Statesville and Winston-Salem, and points in Tennessee, South Carolina, Georgia, Florida and Alabama.

2. That it also operates under intrastate rights between Charlotte and Asheville over United States Highway No. 74, between Charlotte and Greensboro over United States Highway No. 29, and between Charlotte and High Point *via* Albemarle and Asheboro.

3. That it urges as justification for the license, here sought, both economy in operation and service to the public by handling at one and the same time and in the same trucks interstate and intrastate shipments to and from points on the proposed route.

4. That witnesses testified in support of the application, and generally to the effect that existing intrastate service over the proposed route is reasonably satisfactory, but that some inconvenience is occasioned by a division of interstate and intrastate shipments between carriers according to their respective operating rights.

5. That Frederickson Motor Express Corporation now operates under intrastate rights between Charlotte and Winston-Salem, with schedules set up by Mooresville and Statesville, and also by Salisbury and High Point.

6. That on 6 May, 1942, "this Commission granted the Lowther Trucking Company motor vehicle franchise rights to transport property between Charlotte and Winston-Salem *via* Mooresville and Mocksville."

7. That the present intrastate carriers have sufficient equipment and maintain sufficient schedules reasonably to meet the transportation needs over the proposed route.

Whereupon it was ordered that the application of the Great Southern Trucking Company be denied.

In apt time, the petitioner filed exceptions to the findings and order of the Commission. These were overruled, and from this final disposition of its petition, the Great Southern Trucking Company gave notice of appeal. The matter was certified to the Superior Court of Mecklenburg County.

At the hearing in the Superior Court, the original protestants, Frederickson Motor Express Corporation and Smith Transfer Corporation, also *Piedmont Mountain Freight Lines* (successor to Lowther Trucking Company) came in and asked to be made parties to the proceeding. The petitioner objected to the last named protestant being made a party. The motion was allowed as to all three. Exception.

In the main, the evidence offered is similar to that before the Commission, with some additional corroborative testimony. It is not materially different from what was heard by the Commission. Some shippers prefer to use the facilities of the petitioner, while others are satisfied with the services of the present intrastate carriers. For example, the Ford Motor Company, even at additional cost, uses the Great Southern to "pick up" its shipments in Charlotte, which are then turned over to one of the other carriers, if destined to points on the proposed route. On the other hand, an agent of the Piedmont Mountain Freight Lines testified: "We have tried to operate a through truck from Charlotte to Winston-Salem and return, but we are operating such service only when we have a sufficient volume of freight to warrant running that truck. We run that truck on an average of possibly three times a week. We have a trailer unit set aside for that purpose. On the days we do not operate that service, the truck sits in the yard. Our present volume is less than half." .

Upon consideration of all the evidence, and on motion of the protestants, the action was dismissed as in case of nonsuit. From this ruling the Great Southern Trucking Company appeals, assigning errors.

*Arch T. Allen and Guthrie, Pierce & Blakeney for petitioner, appellant.*

*Bailey, Lassiter & Wyatt and J. Laurence Jones for protestant, appellee.*

STACY, C. J. The question for decision is whether the showing made in the Superior Court suffices to overcome the *"prima facie* just and reasonable" disposition of the matter by the Utilities Commission. The trial court answered in the negative, and we cannot say the result should be disturbed.

The ruling in the court below was on demurrer to the evidence, and as no challenge was interposed to the appeal as such, this latter question, debated on argument, is neither considered nor decided. Its determination seems unnecessary in the view we take of the case.

The scintilla rule is not applicable here. The matter came into the Superior Court on appeal from a determination of the Utilities Commission. This is presumed to be valid, and is not to be disturbed "unless it is made to appear that . . . it is clearly unreasonable and unjust," to quote the language of *Hoke, J.,* in *Corporation Commission v. R. R.,* 170 N. C., 560, 87 S. E., 785. To say that it may be overcome by a mere inference of fact is not only to render it feckless, but also to reduce the *exception* to no real value or significance. *S. v. R. R.,* 161 N. C., 270, 76 S. E., 554. It was not intended that an appeal should be taken

simply to see "how it might strike the Court." *Utilities Com. v. Kinston,* 221 N. C., 359, 20 S. E. (2d), 322. In the recent case of *Utilities Com. v. Coach Co.,* 218 N. C., 233, 10 S. E. (2d), 824, the observation is made that it requires the appellant to "introduce substantial evidence in support of his case, or run the risk of an adverse verdict." Substantial evidence is more .than a scintilla or a permissible inference. See *Consolidated Edison Co. v. Nat. L. R. Bd.,* 305 U. S., 197, 83 Law Ed., 126.

The statute provides that on appeal to the Superior Court, "if there are exceptions to any facts" it shall be placed on the civil issue docket, and the trial shall be under the same rules and regulations as are prescribed for the trial of other civil causes, "except" that the decision or determination made by the Commission "shall be *prima facie* just and reasonable." C. S., 1098; McIntosh on Procedure, 819. In other words, the trial is to be under the same rules and regulations applicable in other civil causes, save and except the *prima facie* effect to be given the decision or determination of the Commission.

The provision that on appeal the trial shall be "under the same rules and regulations as are prescribed for the trial of other civil causes," has been interpreted to mean that the trial shall be *de novo. S. v. R. R., supra; Corporation Com. v. Mfg. Co.,* 185 N. C., 17, 116 S. E., 178.

It is to be remembered that what constitutes "public convenience and necessity" is primarily an administrative question with a number of imponderables to be taken into consideration, *e.g.,* whether there is a substantial public need for the service; whether the existing carriers can reasonably meet this need, and whether it would endanger or impair the operations of existing carriers contrary to the public interest. Precisely for this reason its determination by the Utilities Commission is made not simply *prima facie* evidence of its validity, but *"prima facie* just and reasonable." It is not the intent of the statute that the public policy of the State should be fixed by a jury.` The court's jurisdiction in the premises is neither original nor wholly judicial in character, and so the weight to be given the decision or determination of the Utilities Commission in any given case is made an exception to its usual procedure. *Corp. Com. v. R. R.,* 151 N. C., 447, 66 S. E., 427; *Prentis v. R. R.,* 211 U. S., 210. See *Belk's Department Store v. Guilford County,* 222 N. C., 441, 23 S. E. (2d), 897, where a fruitless effort was made to obtain a judicial review of determination by another administrative agency even in the absence of a presumptive declaration such as we have here.

Nor is it to be overlooked that in 1933, the Commission was given authority to grant or refuse any application for a franchise certificate where the granting of such application would duplicate, in whole or in

part, a previously authorized similar class of service, unless it is shown to the satisfaction of the Commission that the existing operators are not providing sufficient service reasonably to meet the public convenience and necessity, and the existing operators, after thirty days' notice, fail to provide the service required by the Commission. Ch. 440, sec. 1, Public Laws 1933, amending ch. 136, sec. 3, Public Laws 1927.

The petitioner, Great Southern Trucking Company, is a Florida corporation engaged in interstate commerce by truck, operating across the State *via* Charlotte and Winston-Salem, but without the privilege of intrastate business between these two points, which it now seeks. The Commission found that the present intrastate carriers between Charlotte and Winston-Salem, over the proposed route, maintain sufficient schedules to meet the transportation needs in a reasonable manner, and that the facts presented do not warrant the granting of petitioner's application. There is no sufficient evidence on the record to overturn this determination by the Commission or to rebut the presumption that it is just and reasonable.

On the record as presented, the correct result seems to have been reached.

Affirmed.

BARNHILL, J., concurring: The appellant does not challenge the right of defendant to appeal herein. I doubt that the Court should dismiss *ex mero motu.* Hence, on this record, I am in full accord with the majority opinion. At the same time I deem it not amiss to call attention to provisions for appeal from orders of the Utilities Commission. As the Commission acts both as a court under the Utilities Commission Act and as an administrative agency under the Motor Bus Act, the distinctions drawn in the several statutes are important.

The Corporation Commission was created in 1899 and was charged with the duty of supervising railroad, telephone and telegraph, and certain other *quasi*-public corporations, as to rates charged and services rendered. Ch. 164, Public Laws 1899. By various amendments to this Act this supervisory power has been extended to include practically all other public service corporations other than motor bus companies using the public highways.

All the corporations brought under the supervision of the Corporation Commission by this Act, as amended, procure their franchise or license from a governmental agency other than the Commission, and the power of the Commission is limited to the supervision and control over rates charged and services rendered by operating corporations.

The original Act, chapter 164, Public Laws of 1899, provides that *any person affected thereby* may appeal from "all decisions or determi-

nations" of the Commission. This provision is brought forward by reference or otherwise in each of the amendatory Acts, the last of which was chapter 127, Public Laws of 1913. When the Act was codified this provision for appeal was set forth as an independent section (1097) of chapter 21, Consolidated Statutes of 1919.

Considered alone and unrelated to other sections of the same chapter, C. S., 1097, appears to give the right of appeal from all orders and decrees of the Corporation Commission without regard to the subject matter of the order or the source of power under which the Commission acts. It is apparent from the reading of *Utilities Commission v. Coach Co.,* 216 N. C., 325, 4 S. E. (2d), 897, that this fact led to the decision in that case.

But even as codified, this section is a mere part of the composite whole. The other sections of the same chapter are *pari materia,* and must be considered in construing the meaning of its language. When so construed the original provision has not been modified or enlarged. The *party affected* may appeal from any order or decree made by the Commission in relation to "rates charged or services rendered" under the power conferred by the terms of the Act. The power thus conferred relates exclusively to operating public service corporations.

By chapter 134, Public Laws of 1933, the Corporation Commission was abolished and the Utilities Commission was created in its stead. Under the terms of this Act the new Commission was given regulatory and supervisory power over operating public service corporations other than motor bus companies. No power to grant franchises is therein contained. The right of appeal, however, is restated and redefined: "From the decision of said Utilities Commissioner, or the said Utilities Commission, *any party to said proceeding* may appeal to the Superior Court at term as designated in and under the rules of procedure required by section(s) 1097, 1098, 1099, 1100, 1101, 1102, Consolidated Statutes, said appeal to be prosecuted and the said matter and controversy there to be heard and disposed of as is now provided by law, and upon such appeal being taken, it shall be the duty of the Utilities Commission to certify its decision and rulings to the said Superior Court as now provided by law." Sec. 12. Thus only the procedural provisions of the named sections of the Consolidated Statutes are retained.

Neither the Corporation Commission Act nor the Utilities Commission Act vests the Commission with power to grant franchises to motor bus companies. Hence the right of appeal contained in the Corporation Commission Act and redefined in the Utilities Commission Act has no relation to orders or decisions under the Motor Bus Act, except, perhaps, orders concerning rates and services. Sec. 1, ch. 307, Public Laws 1933.

Certainly it does not apply to the discretionary power to grant or to deny a franchise, conferred on the Commission by the Bus Act.

In proceeding under the powers conferred by the Acts heretofore discussed, the Commission deals with rates charged and services rendered by operating corporations. This usually affects property rights. In respect thereto the Utilities Commission is made a court of record. Sec. 9, ch. 134, Public Laws 1933. Hence, provision for appeal from its orders and decrees in regard thereto was to be expected.

When, however, the Commission as an administrative agency of the Legislature comes to act on applications for franchises to operate motor buses, its authority stems from a separate and distinct Act which is not amendatory, and constitutes no part, of the Utilities Commission statute. Under no rule of construction known to me can the provisions of chapter 134, Public Laws of 1933, be said to form a part of this statute. On the contrary, we must look exclusively to this and amendatory acts to ascertain what right of appeal, if any, exists.

The first Act, ch. 50, Public Laws 1925, was revised and re-enacted in 1927. Ch. 136, Public Laws 1927. This statute as amended constitutes our motor bus law and is known as the Bus Act. It contains provision for appeal which is controlling. *"The holder of such certificate"* shall have the right of appeal to the Superior Court. Sec. 8.

This statute was substantially amended in 1937. Ch. 247, Public Laws 1937. The amended Act contains the following: *"Provided the holder of any certificate, franchise, or license whose certificate, franchise, or license is ordered canceled* hereunder shall have the right of appeal to the Superior Court as is now provided by law for appeals from the Commission." Sec. 4.

Thus the *holders* of certificates, franchises, or licenses are given the right to appeal. Applicants for franchises are not. *Expressio unius est exclusio alterius.*

The distinction drawn by the Legislature is logical and sound. Clearly, orders which affect a holder of a certificate or franchise affect rights. On the other hand, the business of carrying passengers and freight for hire by motor vehicles over and along the public highways is a privilege, the licensing of which is peculiarly and exclusively a legislative prerogative. The privilege may be granted or withheld at the will of the General Assembly. It may, in its discretion, create an administrative agency to perform this purely administrative function. This it has elected to do. When the Commission as the agency thus set up passes upon applications for a franchise to use the public roads for commercial purposes it acts as a fact-finding administrative agency of the State. No legal or property right of the applicant is involved. He suffers no injury when and if his application is denied. His only right is to require

the Commission to act in good faith. *Pue v. Hood, Comr. of Banks,* 222 N. C., 310. Even if, "in the judgment of the Commission," public convenience and necessity requires additional service, he cannot demand judgment in his favor. He must still depend upon the grace of the Legislature as administered by the Commission. Secs. 3 (c), 3 (f), ch. 136, Public Laws 1927; sec. 1, ch. 440, Public Laws 1933.

The legislative and judicial branches of government are separate and distinct agencies of government. The granting of franchises is exclusively legislative. It would be most unusual for the Legislature to surrender this prerogative to the courts, even as appellate supervisory agencies. We should not so hold without a clear and unequivocal declaration of such intent to that end. To my mind the contrary intent definitely appears.

Under the express language of the motor bus law the power of the Commission to grant franchises to a passenger or freight carrying corporation involves the exercise of discretion and judgment.

"After such hearing, the Commission may issue the license certificate, or refuse to issue it, or may issue it with modifications and upon such terms and conditions *as in its judgment* the public convenience and necessity may require." Sec. 3 (c), ch. 136, Public Laws 1927.

"The Commission shall not refuse to grant a franchise certificate, upon the original application, to any applicant for the transportation of property solely because of multiplicity of similar operators over such proposed route, but the Commission shall refuse any application for a passenger franchise certificate over a route where there has already been established one or more passenger lines, unless it is *shown to the satisfaction of the Commission* that the existing operations are not providing sufficient service to reasonably meet the public convenience and necessity, and the existing operators, after thirty days notice, fail to provide the service required by the Commission." Sec. 3 (f), ch. 136, Public Laws 1927. The first provision of sec. 3 (f) above quoted was expressly repealed in 1933, and the following was substituted: "The Commission *may refuse* to grant any application for a franchise certificate where the granting of such application would duplicate, in whole or in part, a previously authorized, similar class of service." Sec. 1, ch. 440, Public Laws 1933.

The terms "to the satisfaction of," "as in its judgment," "may issue . . . or refuse to issue" and, "may refuse to grant" clearly import the exercise of discretion and judgment. We have consistently held that the courts will not review or reverse the exercise of discretionary power by an administrative agency except upon a showing of capricious, unreasonable, or arbitrary action, or disregard of law. *Pue v. Hood, Comr. of Banks, supra.*

In any event, conceding *arguendo* the right of appeal, there is no issue of fact to be submitted to a jury. The right to trial by jury applies exclusively to actions in which legal rights are involved. Art. I, sec. 19, N. C. Const.; *Groves v. Ware,* 182 N. C., 553, 109 S. E., 568; *R. R. v. Parker,* 105 N. C., 246, 11 S. E., 328; *McInnish v. Board of Education,* 187 N. C., 494, 122 S. E., 182; *Comrs. v. George,* 182 N. C., 414, 109 S. E., 77; *Hagler v. Highway Commission,* 200 N. C., 733, 158 S. E., 383; *Mountain Timber Co. v. Washington,* 243 U. S., 219, 61 L. Ed., 685; *Andrews v. Pritchett,* 66 N. C., 387; *Cozad v. Johnson,* 171 N. C., 637, 89 S. E., 37; 31 Am. Jur., 557 (see n. 6 for other authorities from U. S. and many state courts). The Constitution, Art. I, sec. 19, guarantees the right to trial by jury only in controversies respecting property, and then only in cases where under the common law the demand that the facts should be found could not have been refused. *R. R. v. Parker, supra.*

If we are to extend the right of appeal to an applicant for license, then the provision that "the order of the Commission shall be deemed *prima facie* reasonable and just" raises the question to be decided on appeal: Is the order in fact unreasonable and unjust? It is upon this basis that the appeal herein is decided. In the absence of any challenge of the right of appeal, I concur.

It may be well to note here that in neither the Utilities Commission Act nor in the Motor Bus Act is there any reference to "trial by jury" or "trial *de novo.*" These terms have been engrafted upon the law by judicial interpretation.

WINBORNE and DENNY, JJ., join in this opinion.

SEAWELL, J., dissenting: It is evident that the majority who have determined the issue in this case are not agreed on the right of the applicant to appeal. Conceding this right, my dissent, concisely stated, is from the holding of the majority that the *prima facie* presumption raised by the statute requires any stronger evidence to rebut it than any other presumption, *prima facie* on its face, intended merely to require evidence from the party on whom the burden rests or run the risk of non-persuasion and an adverse finding upon the issue.

If it requires more evidence, the court has no authority, *ipso facto,* to take over at that point and pass upon its weight and sufficiency against the uniform practice of this Court from time immemorial, and, I think, against the plain terms of positive law which we have so long meticulously respected. Even in those cases in which the evidence is required to be "clear, strong and convincing" the power of the court goes

only so far as to authorize an instruction to the jury that the evidence must be of that character to justify the relief demanded.

There is no policy of the State in any danger by submission of the facts to jury trial. The real controversy is over the question of public convenience and necessity, and the policy of the Legislature, as plainly expressed in the statute, is to throw around the Commission the restraint of review, and, as it has in so many similar matters, has chosen to submit the facts bearing on the main issue to the more popular device of trial by jury.

The applicant has not contended here that the ultimate choice of means to remedy the want of adequate public service may not rest with the Utilities Commission after the issue as to the necessity has been determined—whether by removing the restriction in the existing franchise, or granting a franchise to another person or concern, or requiring the respondent to improve or enlarge its facilities used in the particular service, which are now, from the evidence, at the point of saturation. If the plea of "policy" upon which the main opinion seemingly rests has any force, it should be concerned with this alone—the choice of the franchise holder or the means of remedying the condition of such inconvenience if it is found to exist—it should not affect the mode of trial upon the facts as provided in the statute. Decision should not be based on an ideology as to the comparative fitness of the court on the one hand and the jury on the other to deal with the issue presented. It should be referred to the warrant of statutory authority. The Legislature has not designated the court as a policy making agency any more than it has the jury. The policy is made by the Legislature, as expressed in the statute.

I disagree with the majority as to the significance to be attached to the evidence. I must refer to the record itself, as space forbids its reproduction here. In my opinion, it discloses a condition upon which the Commission might well have taken some action. The case comes to us from a section where the wheels of industry turn fast and transportation is an exponent of progress. I think the service is inadequate. From my point of view, upon this question, "convenience" and "necessity" are the same thing. For relief it is not necessary that the public be put on the rugged edge of exigency. This question, to which the whole law is pointed, requires no judicial acumen to decide, and might well be decided by intelligent laymen, and I repeat my conviction that the statute, whatever the form of the issue by which it may be determined, intended to leave it to the jury.

I think the case should have been submitted to the jury on issues addressed to the facts, and with appropriate instructions. Any procedural prerogatives of the Commission could be respected in the judgment.