STATE OF NORTH CAROLINA ON RELATION OF THE UTILITIES COMMISSION v. CITY COACH COMPANY, INC.

(Filed 21 November, 1951.)

**1. Utilities Commission § 3: Carriers § 5—**

Chap. 1132, Session Laws of 1949, has no application in determining the validity of an order of the Utilities Commission entered 30 July, 1947.

**2. Same—**

Under the provisions of Chap. 440, Session Laws of 1933, amending Chap. 136, Session Laws of 1927 (G.S. 62-105(f)), the Utilities Commission has jurisdiction upon a showing of public convenience and necessity therefor to grant to a city bus carrier authority to operate over a public highway for a distance of .7 of a mile outside the city, without finding that the operations of an inter-urban bus company under franchise along said highway were not providing sufficient service, or that thirty days notice had been given it and it had failed to provide the service required by the Commission.

**3. Same—**

What constitues public convenience and necessity is primarily an administrative question and involves determination, among other things, of whether there is a substantial public need for the service, whether existing carriers meet this need, and whether it would impair the operation of existing carriers contrary to the public interest.

**4. Utilities Commission § 5—**

An order of the Utilities Commission is *prima facie* just and reasonable. G.S. 62-26.10.

BARNHILL, J., concurring.

APPEAL by Utilities Commission from *Sink, J.,* March Term, 1951, of GASTON. Reversed.

The case involves the validity of an order of the Utilities Commission granting franchise certificate to the Gastonia Transit Company to operate motorbuses on Highway #7 for seven-tenths of a mile beyond the

corporate limits of the City of Gastonia over route now served by the City Coach Company. The City Coach Company appeared in opposition.

In 1942 the Gastonia Transit Company (hereinafter called the Transit Company) was granted franchise by the City of Gastonia to operate bus transportation service over the city streets. In 1945 the City approved the Transit Company's application for authority to extend its operation to a point on Highway #7 seven-tenths of a mile beyond the city limits. Thereupon the City Coach Company (hereinafter referred to as the Coach Company), an inter-urban motor-carrier of passengers which also operated buses on certain streets of the city and thence out along Highway #7, instituted action to restrain the operation of the Transit Company beyond the city limits. This action reached this Court by appeal and was heard at Spring Term, 1947, and the decision is reported in 227 N.C. 391, 42 S.E. 2d 398. It was held in that case that only the Utilities Commission had power to grant franchises for operation of motorbuses over the public highways, and that one desiring to engage in that business must first apply to and obtain the Commission's franchise certificate authorizing such operation.

On 15 April, 1947, the Transit Company filed its application for franchise certificate for operation over Highway #7 from Gastonia city limits to intersection of Lower Dallas Road, the distance being seven-tenths of a mile, to which the Coach Company filed protest on the ground that the Coach Company was already operating over this route under franchise certificate issued by the Utilities Commission in 1946.

After hearing all the evidence the Utilities Commission found that there was need for the services of both the Coach Company and the Transit Company, both rendering good service, and "that public convenience and necessity for the operation of the Gastonia Transit Company has been clearly shown." It was thereupon ordered that franchise certificate issue to the Transit Company authorizing it to engage in the transportation of passengers by bus over certain streets and thence from city limits *via* Highway #7 to the intersection of the Lower Dallas Road. The Coach Company excepted to this order. Its exceptions were overruled, and it appealed to the Superior Court of Gaston County.

In the Superior Court the Transit Company and Utilities Commission moved to dismiss the Coach Company's appeal. On the hearing Judge Sink overruled the motion to dismiss the appeal, and on the merits held that the order of the Commission was void for failure to comply with the provisions of the statute, G.S. 62-105 (f), in that it was not shown that the existing operations were not providing sufficient service or that after 30 days' notice the Coach Company had failed to provide the service required by the Commission.

The Utilities Commission excepted and appealed.

*Attorney-General McMullan and Assistant Attorney-General Paylor for the North Carolina Utilities Commission, appellant.*
*Banks Arendell for Gastonia Transit Company, Inc., appellant.*
*Basil L. Whitener for City Coach Company, appellee.*

DEVIN, C. J.   The appeal in this case presents the question of the validity of an order of the Utilities Commission granting franchise certificate to the Gastonia Transit Company to operate buses over seven-tenths of a mile of the route now served by the City Coach Company.

The court below held that the order was void for the reason that the Utilities Commission had granted the Transit Company's application for transportation service which would duplicate in part a previously authorized similar class of service without having found that the existing operation was not providing sufficient service to reasonably meet the public convenience and necessity as required by statute.

Undoubtedly the ruling appealed from would find support in the present statute, Chapter 1132, Session Laws of 1949, now codified as G.S. 62-121.52 (7), but this proceeding was instituted before the Utilities Commission in 1947, and the order of the Commission now under consideration was entered 30 July, 1947.   Thereafter it was pending on appeal from the Commission in the Superior Court of Gaston County until heard in March, 1951.   It is provided in the Bus Act of 1949 (sec. 40 of Chap. 1132) that "this Act shall not apply to any proceeding which has been heard and is awaiting a decision of the Commission or in which the Commission has entered its decision or order prior to its effective date (Oct. 1, 1949)."   So that the validity of the order of the Commission entered in 1947 must be judged by the controlling statute then in force. Chapter 136, Session Laws of 1927, amending and re-enacting previous statutes relating to buses provided that "the Commission *shall* refuse any application for passenger franchise over a route where there has already been established one or more passenger lines, unless it is shown to the satisfaction of the Commission that the existing operations are not providing sufficient service to reasonably meet the public convenience and necessity. . . ."   But by Chap. 440, Session Laws of 1933, the 1927 statute was amended to read as follows: "The Commission *may* refuse to grant any application for a franchise certificate where the granting of such application would duplicate, in whole or in part, a previously authorized similar class of service, unless it is shown to the satisfaction of the Commission that the existing operations are not providing sufficient service to reasonably meet the public convenience and necessity. . . ."   This statute was codified as 62-105 (f).

An examination of the wording of the statute in force when the order of the Utilities Commission was entered leads to the conclusion that the

General Assembly had at that time authorized the Utilities Commission in its discretion, in carrying out the purposes of the Bus Act, for the public benefit, to grant or refuse application for a franchise certificate to operate passenger buses over a designated route, though it might duplicate in part an authorized similar class of service. But the authority to the Commission to exercise its discretion was qualified by the implied direction in the next clause that if it be shown to the satisfaction of the Commission that the previously authorized operator was not rendering adequate service, or failed after notice to provide the required service, then it would be the duty of the Commission to grant to the properly qualified applicant franchise to operate. The authority to grant a franchise certificate for the operation of passenger buses on the highway must in any event be predicated upon a showing of public convenience and necessity therefor.

This conclusion seems to be supported by the decision of this Court in *Utilities Commission v. Trucking Co.,* 223 N.C. 687, 28 S.E. 2d 201, where it was said, *Chief Justice Stacy* speaking for the Court: "Nor is it to be overlooked that in 1933, the Commission was given authority to grant or refuse any application for a franchise certificate where the granting of such application would duplicate, in whole or in part, a previously authorized similar class of service, unless it is shown to the satisfaction of the Commission that the existing operators are not providing sufficient service reasonably to meet the public convenience and necessity." And in a concurring opinion in that case by *Justice Barnhill* it was said: "Under the express language of the motor bus law the power of the Commission to grant franchises to a passenger or freight carrying corporation involves the exercise of discretion and judgment. . . . The term . . . 'may refuse to grant' clearly import the exercise of discretion and judgment. We have consistently held that the courts will not review or reverse the exercise of discretionary power by an administrative agency except upon showing of capricious, unreasonable, or arbitrary action, or disregard of law." *Justice Barnhill's* concurring opinion in this case was subsequently adopted by the Court in *Utilities Comm. v. McLean,* 227 N.C. 679, 44 S.E. 2d 210.

And in *Utilities Commission v. Coach Co.,* 224 N.C. 390, 30 S.E. 2d 328, *Justice Denny* writing the opinion of the Court, after quoting G.S. 62-105 (f), used this language in interpretation thereof: "Under the provisions of the foregoing statute, the Commission may in its discretion grant a franchise which would duplicate in whole or in part a previously authorized similar claim of service, and when it is shown to the satisfaction of the Commission that existing operations are not providing sufficient service to reasonably meet the public convenience and necessity, and the existing operators, after thirty days' notice, fail to provide the

service required by the Commission, it would be its duty to do so. The language is that the Commission may refuse to grant the additional franchises unless it is shown to the satisfaction of the Commission that certain facts exist as set forth in the statute."

Hence, it would seem logically to follow that where the Commission under the statute in force in 1947 has found upon sufficient evidence "that numerous people use the service of the Gastonia Transit Company in going to and from work to places in and bordering Gastonia which are not served by the City Coach Company, and that public convenience and necessity for the operation of the Gastonia Transit Company has been clearly shown," and the Commission has upon such finding issued franchise certificate to the Transit Company, its order should not be vacated, notwithstanding there was no finding of inadequate service by the Coach Company.

What constitutes public convenience and necessity is primarily an administrative question and involves determination, among other things, of whether there is a substantial public need for the service, whether existing carriers meet this need, and whether it would impair the operations of existing carriers contrary to the public intent. *Utilities Comm. v. Trucking Co., supra.* And the determination of the Utilities Commission is declared by statute to be *prima facie* just and reasonable. G.S. 62-26.10; *Utilities Comm. v. Coach Co., supra.*

The ruling of the court below on the motion to dismiss the appeal from the Utilities Commission to the Superior Court seems to be in accord with the facts and the rules governing appeals from the Commission.

No procedural question is raised or decided on this appeal, but we note the statute G.S. 62-26.7 prescribes that when an appeal shall be taken from an order of the Utilities Commission the case shall be entered on the docket of the Superior Court as "State of North Carolina on relation of the Utilities Commission" as party plaintiff, and it is further provided by G.S. 62-26.12, "Any party may appeal to the Supreme Court under the same rules and regulations as are prescribed by law for appeals." Where the Utilities Commission as an administrative agency of the State establishes rates and regulations for those engaged in public service, or exercises similar functions, it properly should appear as a party to enforce its orders in the public interest, but when the Utilities Commission sits as a court of record to determine the rights of rival claimants to a valuable franchise, it is somewhat anomalous to find it appearing in this Court to uphold its order from which one or the other party had appealed. However, this procedure seems to have been authorized by the General Assembly in the statutes noted. Compare G.S. 1-271.

For the reasons herein stated we conclude that the court below was in error in holding the order of the Utilities Commission appealed from was

invalid. On the record and under the statutes in force at the time the order was entered the Utilities Commission was entitled to have its order affirmed. The cause should be remanded to the Utilities Commission for such further regulations as may be necessary in adjusting the rights of the parties to this proceeding, in the public interest.

Reversed.

BARNHILL, J., concurring: While I am in accord with the majority decision on the merits of this controversy, I wish to make it crystal clear that, in my opinion, the Utilities Commission had no right to appeal to this Court from the ruling of the court below.

While the rights of the respective parties are fixed by Ch. 134, P.L. 1933, now General Statutes Ch. 62, Art. 4, the right of appeal from the judgment entered, being procedural in nature, is controlled by the provisions of Ch. 989, Session Laws of 1949 (G.S. 62-26.6 et seq.), which was adopted prior to the hearing in the Superior Court.

Briefly stated, the pertinent provisions of that Act are these: (1) the party adversely affected by a decision of the Utilities Commission may petition for a rehearing and "if the decision (on the petition to rehear) fails to grant the full relief prayed for in the petition, or . . . after a decision becomes final by reason of the failure of the Commission to act," the petitioner may appeal within the time and under the conditions specified in the Act, G.S. 62-26.6; (2) upon such appeal the cause shall be entitled "State of North Carolina on relation of the Utilities Commission against" the appellant, to be designated by name in the caption, G.S. 62-26.7; (3) on the appeal "the complainant in the original complaint before the Commission shall be a party to the record and each of the parties to the proceeding before the Commission shall have a right to appear and participate in said appeal," G.S. 62-26.8; (4) any party may appeal to the Supreme Court from the judgment of the Superior Court *"under the same rules and regulations as are prescribed by law* for appeals, except that the Utilities Commission, if it shall appeal, shall not be required" to give appeal bond, G.S. 62-26.12. (Italics supplied.)

Thus, in providing for appeals in cases originating before the Utilities Commission, the only references to the Commission are the one requiring its name to appear in the caption and the one exempting it from the requirement that the appellant give an appeal bond. G.S. 1-270, 1-285. Even if we concede that these provisions are sufficient to permit it to appeal in proper instances, the right of appeal in Utilities Commission cases is subject to existing statutory rules regulating appeals generally, and the only parties who are permitted to appeal to this Court are the parties "aggrieved" by the judgment entered in the Superior Court. G.S. 1-271.

The party aggrieved, within the meaning of this provision, is the one whose rights have been directly and injuriously affected by the judgment entered in the Superior Court. *Freeman v. Thompson,* 216 N.C. 484; McIntosh P. & P. 767-8.

Under no view of this case could it be said that the Commission is a "party aggrieved" by the judgment from which it appeals. The reversal of its ruling may have inflicted some slight injury to its pride of opinion. Even if such was the case, this is the full extent to which it is affected.

The provisions for appeal in cases originating before the Utilities Commission leave much to be desired. The requirement that the original complainant—here the Gastonia Transit Company—shall be made a party to the action was not followed. Perhaps this was for the reason the statute is so indefinite in this respect. In any event, it would seem that the parties acted under the apprehension that it was necessary for the Commission to appeal in order to give the Transit Company an opportunity to be heard in this Court. Under such circumstances, particularly where there is merit in the appeal, we should not dismiss *ex mero motu.*

Let me presume to suggest that the requirement of the statute in respect to the parties to the action on appeal may be observed by naming both parties defendants and designating one "petitioner" and the other "respondent," in this manner: "State of North Carolina *ex rel.* Utilities Commission *v.* City Coach Company, petitioner, and Gastonia Transit Company, respondent." Since only the party whose petition for rehearing has been denied in whole or in part is granted the right to appeal to the Superior Court, the party designated as petitioner would, in every case, be the appellant.